COOPER *against* DAVIS.

A mortgagor, before his right of redemption is foreclosed, continues the owner of the mortgaged premises, not accountable for the rents and profits, nor liable, in an action at law, for waste committed while he is in possession : the mortgagee having merely a lien upon the property for the security of his debt, by virtue of which he may obtain possession, and appropriate the pledge in payment of his debt.

Nor will a decree of foreclosure, before the expiration of the time limited for redemption, and a judgment in ejectment, without execution executed, against the mortgagor, vary his rights in relation to the mortgaged premises.

Therefore, where *A* executed to *B* a mortgage of certain real estate, upon which there was a grist-mill ; *B* obtained against *A* a decree of foreclosure and a judgment in ejectment for the possession ; but before the expiration of the time limited for redemption, and before *B* had taken possession, under the judgment, or otherwise, *A* severed the stones from the mill, and sold them to *C ;* and *B,* having afterwards found them, took possession of them as his own property ; in an action of trover brought by *C* against *B,* for the mill-stones, it was held, that *C* was entitled to recover.

The appropriate remedy for a mortgagee against a mortgagor in possession, who is impairing the security, by committing waste, is by bill in chancery for an injunction.

THIS was an action of trover, to recover the value of a pair of *Burr* mill-stones, taken by the defendant.

The cause was tried at *New-Haven, January* term, 1843, before *Waite,* J.

The plaintiff claimed title to the property in question, by virtue of a sale made to him by *Walter S. Thompson* and *Charles Cooper.*

The defendant, who admitted the taking, claimed a right to do so, under the following circumstances. In *October,* 1839, he was the owner of an old grist-mill, and having purchased a tract of land for the site of a new grist-mill, he entered into a written contract with *Thompson Cooper* and *David O. Way,* to build and complete the new mill. After they had erected the building for the new mill, and before it was completed according to the contract, *viz.* on the 21st of *February,* 1840, the defendant sold and conveyed to them the whole property owned by him, belonging to the old mill and the new one, including the mill-stones in question. To secure the balance of the purchase-money unpaid at the time of the sale, they afterwards, on the same day, gave two promissory notes, and executed and delivered to the defendant a mort-

New-Haven,
July, 1843.

Cooper
v.
Davis.

gage deed of the same property. At this time, said mill-stones had been taken from the old mill, and placed by the side of the new one, to be used for its completion. They soon afterwards finished it, and put it in operation for grinding corn and other grain, using said mill-stones for this purpose. The lower stone was set in a frame, fastened to the floor of the mill, and was fastened therein, by means of wedges driven between the stone and frame ; and in all other respects, the stones were placed in the mill, in the manner in which mill-stones are usually placed in grist-mills.

*Cooper* and *Way*, having failed to pay one of their notes, after it became due, the defendant brought his bill for a foreclosure, and, at the term of the superior court in *January*, 1842, obtained a decree against them, limiting the time of redemption to the first *Monday* of *July*, 1842. At the same term, the defendant recovered judgment against them, in an action of ejectment, for the mortgaged premises. He afterwards took out execution on this judgment, and placed it in the hands of an officer to be executed. The officer made demand of *Thompson Cooper* for the possession of the premises, who informed him that he lived upon them, and requested a delay of one week, that he might remove his family therefrom ; to which the officer consented. In the mean time, *Thompson Cooper* repaired to the mill, and removed therefrom the mill-stones, and sold them to the plaintiff, who carried them to a certain shed, and placed them there for safe-keeping. The defendant afterwards found them in the shed, took them away, and converted them to his own use ; which is the taking complained of in the declaration. *Cooper* and *Way*, the mortgagors, continued in possession of the mill, from the time of the sale made to them, until after the removal of the mill-stones.

Upon these facts, the plaintiff claimed that he was entitled to a verdict in his favour ; that the mill-stones were not conveyed to the defendant, by virtue of the mortgage deed, and consequently, that he never had any interest in them ; that the mortgagors, having placed them in the mill, for the purpose of carrying on their business, might lawfully remove them, at any time while they continued in possession ; that having so removed them, they might legally sell and deliver

them to the plaintiff; and the plaintiff prayed the court so to instruct the jury.

The court did not so instruct them, but informed them, that although the mill-stones were not conveyed to the plaintiff, by virtue of the mortgage deed, yet, having been placed in the mill, in the manner stated, they became annexed to the freehold; and the mortgagors had no right to remove them therefrom, and convey them to the plaintiff, especially after a decree of foreclosure, and judgment in an action of ejectment, against them.

The jury returned a verdict in favour of the defendant; and the plaintiff moved for a new trial for a mis-direction.

*Kimberly,* in support of the motion, contended, 1. That the defendant never acquired any *title* to the property in question. In the first place, the mortgage deed does not purport to convey the machinery of the mill. Secondly, it appears, by the motion, that these stones were not in the mill, at the time of the mortgage, but were placed there, by the mortgagors, afterwards. Thirdly, these stones, after they were placed in the mill, continued to be personal estate, and, of course, were removable at the pleasure of the owner. *Penton* v. *Roberts,* 2 *East,* 88. *Elwes* v. *Maw,* 3 *East,* 38. *Van Ness* v. *Pacard,* 2 *Peters,* 137. *Cresson* v. *Stout,* 17 *Johns. R.* 116. *Gale* v. *Ward,* 14 *Mass. R.* 352. Fourthly, at any rate, the purpose for which the stones were placed in the mill, and whether real or personal estate, were questions of *fact* for the jury, and as such, should have been submitted to them. *Gibbons on Fixt.* 6.

2. That if these mill-stones were so annexed to the building as that they became part of the realty, and thus a security for the debt, still, having been severed from the freehold, whilst the mortgagors were in possession, they were unincumbered in the hands of their vendee. In the first place, the mortgagor continues the owner of the property mortgaged, until foreclosure. 1 *Pow. Mort.* 156. n. *a.* 4 *Kent's Com.* 155. 2 *Sw. Dig.* 165. 167. *Wakeman* v. *Banks,* 2 *Conn. R.* 446. 600. *Leonard* v. *Bosworth,* 4 *Conn. R.* 423. *Clark* v. *Beach,* 6 *Conn. R.* 159. 163. *Toby* v. *Read,* 9 *Conn. R.* 222. *Peterson* v. *Clark,* 15 *Johns. R.* 205. *Barkhamsted* v. *Farmington,* 2 *Conn. R.* 605. Secondly, the

mortgage is a power to take possession, and hold the premises as security ; and if the mortgagor, whilst in possession, would impair the security contrary to good faith, the remedy is by injunction, not because the mortgagee is owner, but because the mortgagor is using the estate contrary to his agreement and to his good faith. 2 *Sw. Dig.* 168, 172. 4 *Kent's Com.* 155. *Toby* v. *Read,* 9 *Conn. R.* 225. The mortgagee cannot sue the mortgagor for waste. *Peterson* v. *Clark,* 15 *Johns. R.* 205. Thirdly, the mortgagor being the owner, and in possession, has a right to use the property as his own, until restrained.

3. That the rights of the parties are not changed, by the decree and judgment. In the first place, if the relation were changed, then the mortgagor would be liable for the mesne profits, which could not be. He would be entitled, also, to emblements. And he would no longer be liable to pay interest on the debt. Secondly, the action of ejectment was premature. Only one note had fallen due ; and by the terms of the condition, the mortgagee was to take possession, on failure of the mortgagor to pay both notes. The time limited by the decree for redemption, had not expired.

*Baldwin,* contra, remarked, 1. That it was apparent from the facts stated in the motion, that it was the intention of the parties, that the mill-stones, which were to be used in the completion of the mill, were to constitute a part of the defendant's security.

2. That, independently of the contract, which accompanied the mortgage deed, and formed part of the security, the mill-stones, when placed in the mill, became fixtures, and part of the freehold, and as such, were not removable by the mortgagors, even before the judgment in ejectment. *Gib. Fixt.* 19. 55. *Farrar* & al. v. *Stackpole,* 6 *Greenl.* 154. *Goddard* v. *Bolster* & al. 6 *Greenl.* 427. 2 *Serg. & Watts,* 116.

3. That, by the recovery in the action of ejectment, all right of the mortgagors was at an end. In going upon the premises and removing the mill-stones, they were trespassers. *Hodgson* & al. v. *Gascoigne,* 5 *B. & Ald.* 88. (7 *E. C. L.* 35.) 2 *Bac. Abr.* 438. The indulgence of the officer who held the execution, conferred no such right. *Gib. Fixt.* 43. 1 *H. Bla.* 258. 1 *Pow. Mort.* 214. It was not necessary that the

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Cooper
*v.*
Davis.

writ of execution should be executed, to put an end to the tenancy. The rights of the parties were to be determined by the *judgment.* In trespass for the mesne profits, it is only necessary to produce the record of the *judgment* in ejectment : proof of execution executed is not necessary. *Bul. N. P.* 87.

WAITE, J. The defendant claimed title to the mill-stones in question, by virtue of a mortgage made to him of certain real estate, upon which was situated a grist-mill. He had obtained against the mortgagors a decree for a foreclosure, and a judgment for the possession, in an action of ejectment. But before the expiration of the time limited for the foreclosure, and before he had taken actual possession, the mortgagors severed the stones from the mill, and sold them to the plaintiff. The defendant, having afterwards found them, took possession of them as his own property.

The question arising upon these facts, was, whether the plaintiff had thus acquired, as against the defendant, a valid title. Upon the trial in the court below, it was supposed, that, after a decree for a foreclosure had been passed, and a judgment rendered in an action of ejectment for the possession, the mortgagors might be considered as trespassers, in removing the fixed machinery, and disposing of it, in the manner stated in the motion.

The law, recognized in the case of *Hodgson* v. *Gascoigne,* was thought to be applicable to the present. 5 *B. & Ald.* 81. (7 *E. C. L.* 35.) It was there holden, that after a landlord had recovered judgment against his tenant, in an action of ejectment for the possession of the demised property, the tenant ceased to have any interest in the growing crops, and the sheriff had no right to levy an execution upon them.

But, upon consideration, we are all satisfied, that the principle laid down in that case, does not apply to the present. There, the question was, as to the relative rights of a landlord and tenant ; here, as to the rights of a mortgagor and mortgagee.

By repeated decisions, it is now fully established, that a mortgagor, before his right of redemption is foreclosed, continues the owner of the real estate mortgaged ; that he is not accountable for the rents and profits, nor liable, in an action

at law, for waste committed while in possession. The mort- *New-Haven,* July, 1843.
gagee has merely a lien upon the property for the security of
his debt, by virtue of which he may obtain possession, and ap- Cooper *v.* Davis.
propriate the pledge in payment of his debt.

The mortgagor has, indeed, no right, by the commission of waste, to render the security inadequate. But the appropriate remedy for such conduct, is, by way of injunction. If the security is impaired, by cutting and carrying away the wood and timber, the mortgagee has no power to seize them, after they have been severed and carried away; but his duty, in such case, is, to restrain the mortgagor from such acts, by an injunction.

These general principles are not denied. But it is claimed, that the rights of the defendant have been varied, by the judgment in his favour for the possession. But we do not see, that that circumstance can make any material difference. He had not taken actual possession; nor had his title to the property become absolute, by the decree. He stood, simply, in the character of mortgagee out of possession. His further proceedings in relation to the mortgage, might, at any time, have been arrested, by paying him his debt. His interest in the property continued to be but a lien. The mortgagors continued in possession, and as such, were the owners. The millstones, after they had been severed from the mill, removed and sold, could not be reclaimed, by the defendant, by virtue of his mortgage. And although the design of the mortgagors probably was, to impair the defendant's security, and prevent him from collecting the full amount of his debt; yet we cannot say, that he is entitled to relief, in the manner in which he has sought it. His duty was to have protected his rights, by an application for an injunction.

Upon this ground, therefore, without adverting to the other questions, which we do not consider it necessary to examine, we think a new trial must be granted.

In this opinion the other Judges concurred.

New trial to be granted.