## MOONEY VS. BRINKLEY.

A defendant in chancery having submitted to answer the whole bill, and not having, by demurrer, nor by answer, objected to the jurisdiction of the court over any of the matters set up in the bill. cannot, upon the hearing, nor upon appeal, object to the jurisdiction, unless the court was wholly incompetent to grant the relief sought by the bill.

A mortgager having the right of possession of the mortgaged premises, under the terms of the mortgage, until the time of payment limited thereby, cannot be dispossessed by an action at law before the time limited for payment.

But if the mortgager of real estate acts so improperly as to cause damage or waste, whereby the debt of the mortgagee may be jeoparded, the remedy of the mortgagee would be by a bill in equity, to place the mortgaged property in the hands of a receiver, and not by an action at law of forcible entry and detainer.

And if he resorted, illegally, to such action at law, and thereby subjected himself to an action of trespass; and to relieve himself from liability for such tresspass, had to ask the interposition of a court of equity, he should bear all the costs growing out of such illegal action on his part.

Where a mortgagee, for the purpose of taking care of mortgaged property, incurs expenses after he comes ligitimately into possession, he will be allowed them in the settlement; but if he obtains such possession illegally, and thereby unnecessarily incurs such expenses—as where, by an illegal action of Forcible entry and detainer, the mortgagee obtains possession of a tannery and incurs expenses in working out the hides in tan, which was the proper business and trade of the mortgager—he ought not, in equity, to be allowed such expenses, at the cost of the mortgager.

*Appeal from Clark Circuit Court in Chancery.*

The Hon. SHELTON WATSON, Circuit Judge.

FLANAGIN & CUMMINS, for appellant.

WATKINS & GALLAGHER, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court. On the 14th of September, 1848, John S. Brinkley filed a bill

on the chancery side of the Clark Circuit Court, against Lazarus B. Mooney and James R. Rogers, to foreclose a mortgage, and for other purposes.

The allegations of the bill are, substantially, as follows:

That, on the 21st of May, 1846, Mooney purchased of Rogers a tract of land lying near Arkadelphia, containing four acres, for $120, giving his note therefor, payable on the 15th November, 1847, and taking Roger's bond for title.

About two years before the filing of the bill, complainant being a merchant in Arkadelphia, and Mooney being poor and destitute of capital, but complainant having confidence in his honesty, industry, and believing he would prosper, if assisted, at the request of Mooney, furnished him with means to establish and carry on a tan-yard upon the tract of land bought by him of Rogers.

On the 28th of January, 1847, complainant and Mooney had a settlement in respect of the money, merchandize, stock, &c., furnished by complainant for the purpose aforesaid, and it was found that Mooney was indebted to him $1003 08, for which he executed to complainant his obligation, due one day after date, with interest at six per cent., with the privilege of discharging the same "in leather, boots, shoes, and any other trade that might be agreed on by the parties, at cash prices, according to custom." To secure the payment of which, Mooney, on the same day, executed to complainant a mortgage, or trust deed, upon the tract of land aforesaid, and all the improvements thereon; also 168 beef hides; 50 deer skins, and 13 kip skins, a portion of which hides were then in tan; also one wagon, one yoke of oxen, and all the hides of any description which might come into the tan-yard between the date of the deed, and 1st of March, 1848, Mooney reserving the right of retailing leather in the usual course of trade. The property was conveyed to complainant in trust, and upon condition, that if Mooney should pay the amount of the above obligation, "which might be discharged in trade as specified in the face of the note," with interest, &c., on or before the 1st day of March,

1848, complainant was to re-convey to Mooney the premises; but on default of such payment, complainant was empowered to advertise and sell the property for the payment of the debt, &c. The bond and mortgage are exhibited.

That, though the debt was due when the mortgage was executed, yet for the purpose of favoring and indulging Mooney, so as to enable him to pay the debt out of the proceeds and profits of the tan-yard, without a sale of his property, the mortgage was so drawn as not to be subject to foreclosure until the first of March, 1848.

That, without the assistance of complainant, Mooney could not have established and carried on the tan-yard—complainant having furnished all tools, implements, provisions, &c., necessary to support the family and hands of Mooney, and paid the wages of the laborers engaged in establishing and carrying on the yard.

That, after the execution of the mortgage, complainant continued, as before, from time to time, to furnish such supplies as were necessary to support the family of Mooney and carry on the tan-yard; and the supplies so furnished amounted to $219 49, a bill of the particulars of which is exhibited.

After the yard was put into operation, complainant delivered to Mooney two lots of hides to be tanned on the shares one-half for the other—the first lot consisting of 200 cow hides; 21 kip skins; 81 deer skins, and one goat skin, for which Mooney's receipt was taken, dated 6th February, 1847, and is exhibited: The second lot consisting of 13 cow hides and 2 calf skins, as per receipt of 10th March, 1847, which is exhibited. That Mooney received hides from divers other persons to be tanned on the same terms, which were in process of tanning when the yard came into the hands of complainant, as hereinafter stated.

That by proper industry and attention to business, Mooney might have paid the sums due complainant out of the proceeds of the tan-yard, without a sale of the mortgaged property, but after the execution of the mortgage, he became dissipated, was constantly intoxicated, loitered about the *dram-shops* in Arka-

delphia, and was utterly incapable of attending to any business. Finding that, in consequence of his dissipation, he was neglecting the tan-yard, permitting the hides to spoil and daily become damaged, complainant became convinced that Mooney was acting in bad faith towards, and had formed a settled design to defraud, him. He was utterly insolvent, and unless complainant secured the mortgaged property he would lose his debt. That after the season for procuring tan-bark had passed, Mooney, in pursuance of his design to defraud complainant, sold, or contracted to sell, all tan-bark taken and preserved by him for the use of the yard for that year, to a neighboring tanner, and made an arrangement to transfer all the hides in his tan-yard, to another tan-yard; and was on the point of carrying such design into execution. Complainant, under these circumstances, for the purpose of protecting his rights, and preventing Mooney from carrying his fraudulent designs into execution, on the 16th of June, A. D., 1847, brought an action of *unlawful detainer* against him, in the Clark Circuit Court, for the property mentioned in the mortgage, together with the tanyard, all implements, tools, apparatus, and all property of every description, attached to, or in any way connected with said tanyard; and on the same day, by virtue of the writ issued therein, complainant was put into possession of the premises by the sheriff. At the return term, September, 1847, Mooney demurred to the declaration for misjoinder of causes of action; complainant offered to file an amended declaration, which the court would not permit him to do, unless he would restore the personal property delivered to him under the writ; he declined to do this, and judgment was rendered in favor of Mooney on the demurrer. He then moved for restitution of the property, which the court refused, and both parties brought error. A transcript of the proceedings is exhibited. See *Brinkley vs. Mooney*, 4 *Eng. Rep.* 445, 449.

That complainant, after thus obtaining possession of the premises, finding the hides spoiling for want of attention, and deeming it necessary to secure the amount due him by Mooney, &c., kept possession of the tan-yard, &c., hired hands and proceeded,

at his own expense, to have all the hides, of every description, found in the yard, finished off and made into leather, which process of tanning and finishing was completed about the 15th July, 1848, and all the leather so finished held subject to the order of the court.

That upon taking possession of the yard, complainant employed a competent person to take charge thereof, and superintend the same, who kept a correct account of the expenses incurred by complainant in carrying on the yard, and completing the tanning of the hides, which amounted to $888 62, an account of which is exhibited, and he claims an allowance thereof, &c.

That by the neglect of Mooney, while he was in possession of the yard, many of the hides being tanned therein were damaged, and among them those placed there by complainant to be tanned upon the shares. That after the process of tanning was completed, complainant caused the damages, which had so occurred to his share of the hides delivered by him to Mooney to be tanned, to be estimated by competent judges, and they were assessed at $72 92. That 53 of the hides, of the value of $3 per hide, amountting to $159, and 75 deer skins of the value of $75, placed by complainant in the hands of Mooney, were not to be found when complainant came into possession of the yard, but that Mooney had fraudulently converted them to his own use. An account of the damages so assessed, and of the value of the missing hides, amounting in the aggregate to $306 92, is exhibited, and complainant insists that upon an account being taken in the premises, he should be allowed that sum.

An inventory of all the hides found in the yard, when complainant took possession of it, and finished by him, showing which belonged to the yard, which to complainant and which to other persons, with an estimate of the damages which had occurred thereto, by the neglect of Mooney, is exhibited. That of these, 15 sides of harness leather, 228 sides of upper leather, 63 deer skins and 21 kip skins, belonged to the yard, being the tanner's share, were embraced by the mortgage and subject to the pay-

ment of the mortgage debt. That 15 sides of harness, 83 sides of sole, 35 sides of upper leather, — deer skins, and — kip skins belonged to complainant, being his half of such of the remaining hides placed there by him to be tanned as were found in the yard when it came into his possession. And 266 sides of leather belonging other customers.

That the names of the several customers, and the hides which belonged to them respectively, could be ascertained by a book kept by Mooney, and still in his possession, in connection with the marks upon the hides; and complainant prays that Mooney may be compelled to produce the book, so that the hides belonging to the customers, might be delivered to their proper owners, who were becoming clamorous therefor.

That on the 1st of January, 1847, Mooney hired a negro man of Duncan for one year, to cook in the tan-yard, at $—— and complainant went his security upon a note for the hire. When the mortgage was executed, by agreement, the amount of this note, less interest, was charged to Mooney and embraced in the debt secured by the mortgage, complainant executing his obligation to Mooney to pay the note to Duncan, and save him harmless. That the negro was engaged in the tan-yard when complainant obtained possession, and he employed him therein until the expiration of the time for which Mooney had hired him, say six months and a half, and then delivered him to Duncan.

Complainant avers that he did not obtain possession, or dispossess Mooney of any personal property, except the hides above described; a lot of tanner's tools of the value of $——, a list of which is exhibited: said negro boy, and about 35 cords of tan bark, worth $35, which was used in tanning the hides. That all of said property except the negro, which had been delivered to Duncan, and the tan-bark, which had been consumed in finishing the leather, was still in possession of complainant and subject to the order of the court.

That the drunkenness of Mooney, his neglect of the tan-yard, damaging of the hides, fraudulent design to sell the tan-bark,

23c

transfer the hides, &c., &c., forced complainant to resort to the action of unlawful detainer to obtain possession of the premises, &c., in order to protect his rights, &c.

That Mooney had recently brought an action of trepass against complainant in the Clark Circuit Court, charging him with taking and converting to his own use, 500 beef hides, 150 deer skins, 100 cords of tan-bark, 1 bark mill, 4 fleshing knives, 2 currying knives, 2 sets of instruments used for fleshing leather, 2 sets of gearing, 4 shovels, 4 spades, 4 mattocks, 50 hides of leather, 10 vats of leather, or hides in tan, one negro man, and one barrel of train oil, the alleged property of Mooney, of the alleged value of $3000, to his damage, as averred, of $5000, which action was pending for trial; a transcript whereof is exhibited.

That said complainant had not, at any time, taken any property from said Mooney, except that above stated, and in the manner and under the circumstances above detailed; and that said action of trespass was founded upon the supposed trespasses committed by the complainant in obtaining possession of said property as aforesaid, and none other.

The transcript of the trespass action shows that complainant interposed three pleas to the action: 1st. Not guilty; and 2d, and 3d, attempts to justify under the proceedings in the unlawful detainer suit, to which last two, demurrers were sustained, and issue taken to the first.

That Rogers had sued Mooney for the purchase money of said tract of land, obtained judgment, issued execution, caused the land to be levied upon and advertised by the sheriff for sale, and complainant was compelled, in order to protect his rights under the mortgage, to pay the judgment, which he did, on the 11th September, 1848, amounting to $136 25, and took Rogers' receipt therefor, which is exhibited. He insists that Rogers should be compelled to make Mooney a deed to the land, which he had not done in accordance with his bond for title; and that upon an account being taken between Mooney and complainant, he should be allowed the sum so paid by him to Rogers to remove the incumbrance from the mortgaged premises, with interest, &c.

The bill prays that an account may be taken of the amount due complainant upon the mortgage debt; of the supplies, &c., furnished Mooney by complainant after the execution of the mortgage ; of the damages upon complainant's hides occasioned by the neglect of Mooney; of the value of the missing hides ; of the expenses of complainant in carrying on and completing the tanning of the hides; of the amount paid Rogers by complainant. That Mooney be required to pay to complainant the amount found to be justly due from him to complainant, upon the account so taken and stated ; and in default thereof, that the mortgage be foreclosed, and the property specified therein, together with such other of said property in possession of complainant as aforesaid, as may he liable thereto, be sold for that purpose. That Mooney be perpetually enjoined from further prosecuting said action of trespass, and from instituting or prosecuting any other action at law against complainant in respect of the property afore-said. That Rogers be compelled to execute to Mooney, or the person to whom the same may be sold under the foreclosure, a deed to said land, &c. That a receiver be appointed to take charge of the leather and other personal property in possession of complainant as aforesaid, with instructions to deliver to the customers of the yard such portions of the leather as belonged to them, and to sell the remainder of the leather, and other personal property, at public auction for cash, and hold the proceeds thereof subject to the further order of the court. That Mooney be required to produce and place in the hands of the receiver the tanyard books, &c., and for general relief.

On the filing of the bill, a temporary injunction and restraining order were granted, as prayed, and a receiver appointed to take charge of the personal property, &c.

At the March term, 1849, Mooney filed his answer to the bill.

He admits that he purchased the said tract of land of Rogers, at the price and on the terms alleged in the bill ; that Rogers had obtained judgment, and issued execution against him for the purchase money, and complainant had paid off the judgment,

though not at respondent's request. Avers that he was a tanner by trade, and purchased the land for the purpose of establishing thereon a tan-yard, and carrying it on for his own benefit, and immediately after the purchase, commenced improvements thereon for that purpose.

That prior to the 28th January, 1847, he had the tannery in operation; had $1000 worth of leather in the book, and a considerable amount of hides on hand not placed in tan, for which he was then preparing vats, &c. He had made improvements on the land about the yard to the value of $1200; the hides and leather on hand were worth $1200, and the tools, &c., and materials for tanning on hand, were worth $60.

Admits that he was poor and possessed of no considerable amount of property, except his interest in the tan-yard, but attributes his continued poverty and inability to pay his debts to the unjust and fraudulent conduct of complainant, &c. Denies that he solicited complainant to set him up in business, but avers that complainant voluntarily offered to advance him $400, to aid him in setting up the tannery, to be repaid in leather within two years. He availed himself of the offer, and used the means furnished by complainant in putting the tan-yard in operation.

Admits that they had a settlement on the 28th January, 1847, and he fell in debt to complainant $1003 08, the principal part of which was used by respondent in establishing the tannery; but included the hire of Duncan's negro boy for the year 1847, for which complainant was bound as security, &c. That he executed to complainant his bond and mortgage to secure the debt, as alleged in the bill.

After the execution of the mortgage, and before respondent was dispossessed by complainant, he had paid about $40 on the mortgage debt; received many hides by purchase, and to be tanned on the shares, in the usual course of business, and had parted with little or no part of the leather, or stock, except in the payment of the $40 to complainant.

That by the terms of the mortgage respondent was entitled to

possession of the premises, to carry on business, and to retail his leather in the usual course of trade, until the 1st of March, 1848.

That the supplies, tools, provisions, &c., and everything furnished to respondent by complainant, except the cash to establish and carry on the tan-yard, were sold to him by complainant on credit, as a merchant, at a profit, and were all included in the mortgage debt.

He denies, however, that complainant furnished every thing used in establishing and carrying on the tannery, and avers that he obtained considerable means from other persons, and used them for that purpose.

That it was fully understood between complainant and respondent, when the advances were made, that the latter had no resources of re-payment, except his labor in, and the profits of, the tan-yard, and that no profits could be derived therefrom for about two years after it was established, it being the custom of the country to tan hides upon the shares, &c.

That from the time the yard was established until respondent was dispossessed, hides were continually coming in to be so tanned, &c. That the retailing of leather was a source of great profit, &c., and the confidence of the community in his efficiency, &c., in business, was of great value to respondent, &c. That but for the fraudulent conduct of complainant in seizing upon the tan-yard, dispossessing respondent, and depriving him of all means of carrying on the business, he would have been able by the 1st of March, 1848, to have paid for the land, discharged his indebtedness to complainant, and still have had on hand as large a stock of hides and materials as when the mortgage was executed. Such was respondent's calculation when the mortgage was made, and such the reasons why complainant voluntarily agreed to extend the time of payment until 1st March, 1848.

He admits that after the execution of the mortgage, he continued to purchase of complainant supplies, provisions, &c., on credit for the support of his family, and the carrying on of the tan-yard; disputes some of the items in the bill exhibited by complainant therefor, and admits the correctness of others.

He admits that complainant delivered to him, to be tanned on shares, the hides and skins mentioned in the bill, and described in his receipts therefor exhibited with the bill. That he received many hides from other persons to be tanned on the same terms, which hides were in the tannery when complainant seized it, &c.

He positively denies that after the execution of the mortgage, he was habitually unfit for business from intoxication, or did, from any cause, neglect the business of the tannery, so as to suffer the hides to be damaged, &c. That no hides or leather were injured from neglect, want of skill, or inattention on the part of respondent or his hands, from the time the mortgage was executed, until the seizure of the premises by complainant. That in 1846, about thirty sides were somewhat injured, but none afterwards, while respondent controlled the tannery. That hides, in tanning, will often become more or less injured by worms, even with the utmost attention, and some of the hides may have been slightly injured from this cause.

He admits that he was sometimes intoxicated about the time stated in the bill, but avers that his habits before and after the execution of the mortgage were the same, and that he was not, from this or other cause, incapable of attending to his business, and did not neglect, or fail to conduct the tannery, &c., with proper skill and attention.

He expressly denies all the fraudulent conduct and designs alleged against him in the bill. Denies that the hides in process of tanning were suffering any damage from neglect; or that he sold, or intended to sell the tan-bark ; or that he contracted to sell, or made any arrangement to sell, dispose of, or remove from the tannery, any hides, implements or other property connected therewith, except the ordinary retail trade in the tan-yard, of the leather made therein, the right to do which was expressly secured to him by the mortgage. That all such allegations of fraud and misconduct, were fabricated by complainant as a pretence for his unlawful proceedings to dispossess respondent, deprive him of the means of paying his debts, and reap himself the profits of the tan-yard, &c.

That for these purposes, and not for the false reasons alleged in the bill, complainant brought said action of unlawful detainer, and thereby obtained possession, not only of the land and tanyard, but of all the personal property connected with, or used in the tannery, and the negro man hired to work therein. That in such action, the sheriff nor any one else had a right to interfere with the personal property, but by the fraud and contrivance of complainant the sheriff was induced to put him in possession thereof.

That since the filing of the bill, the Supreme Court had reversed the judgment of the Circuit Court in said action, and remanded the cause, with leave to complainant to file an amended declaration therein.

That respondent had not been in the tan-yard since complainant obtained possession of it, and knew nothing of his hiring hands or working out the leather, &c.

But he submits that inasmuch as complainant turned him out of possession of the tannery, deprived him of the means of carrying on his trade, to which he had been educated, of supporting himself and family, and paying his debts, &c., he nor his property ought to be charged with any of the alleged expenses incurred by complainant in consequence of his fraudulent seizure and possession of the tan-yard, &c. That the account for $888 62, exhibited and claimed by complainant, as the amount of expenses incurred in preserving and finishing the leather, &c., was false and fraudulent, and trumped up to swindle the respondent, &c.

He avers that all the hides, &c., delivered to him by complainant to be tanned on shares, were in the yard in process of tanning when complainant took possession thereof, and positively denies that respondent ever converted or disposed of any of them, as alleged in the bill.

Admits that the inventory exhibited with the bill contains about a correct account of the kip and deer skins in the tannery when he was dispossessed, but not of the other hides and leather. That there was in the yard, when he was dispossessed, at least

1000 sides of hides and leather, besides the kip and deer skins. Denies the estimated value of the leather contained in said inventory to be correct; that any damage had occurred to the hides, &c., while he was in charge of the yard, and that all such damage occurred after the seizure of complainant, &c.

That complainant had stopped the trade, and broken up the custom and credit of the yard, &c.

Admits that he kept a book showing the names of customers and the hides that belonged to them, which he had turned over to the receiver. Doubts not but that the customers are anxious to get their leather, but is apprehensive that complainant will defraud them. Complainant had refused to surrender the property, &c., to the receiver, as ordered by the court at the previous term.

That the hire of Duncan's negro included in the mortgage debt was $162. Complainant took possession of him when he seized the yard, &c., and kept him for the remainder of the time for which he was hired, but respondent did not know how he employed him, whether in the yard or otherwise. He had indemnified respondent against the note for the hire, as alleged, &c.

That by said action of unlawful detainer, complainant got possession of the tan-yard, implements, all hides and leather placed there to be tanned on shares, including his own, all the leather, materials, &c., &c., belonging to respondent—said negro man, &c.

He admits that complainant had not, otherwise than by means of said action, taken possession of any property of respondent.

That respondent's habits were well known to complainant, and there was no change in them after the execution of the mortgage. That, when absent from the tan-yard himself, he had a competent man employed to superintend the tannery, &c. Denies the truth of any causes alleged by complainant for resorting to said action of unlawful detainer to dispossess him, &c.

Admits that he had brought an action of trespass against complainant in the Clark Circuit Court, which was pending there for

trial, as alleged.    Insists that, inasmuch as complainant fraudu-
lently, and without authority, seized said personal property,
respondent has the right to prosecute said action, and recover
exemplary damages, &c.    Admits that the action was founded
upon the seizure of complainant of the property under the ac-
tion of unlawful detainer, and not upon other or different tres-
passes.

Admits that Rogers had not made him a deed for the land;
and submits that respondent is not responsible to complainant
for the money paid by him to Rogers on account of the land.

Admits his intention to prosecute his action of trespass, &c.

Having fully answered, he prays to be discharged.

*Rogers* filed an answer admitting that the allegations of the
bill, as to him, were true, and expressing a willingness to make
a deed to the land, to such person, and at such time, as the court
might order, &c.

Mooney filed the affidavit of the receiver, (March 27th, 1849,)
stating that complainant had not delivered to him the property
which he was ordered to take charge of, though he had made
demand therefor, 25th September, 1848, &c.

Mooney also moved to dissolve the injunction upon the denials,
&c., of his answer, &c.

Complainant obtained a continuance of the motion to dissolve,
upon a showing that he could procure depositions to support the
allegations of the bill, by the next term.    He also made affidavit
that all the leather which he offered, in the bill, to surrender,
had been safely kept in his ware-house, since the filing of the
bill: and that, within twenty days after the order was made, ap-
pointing the receiver, he had offered him the key of the ware-
house.    That on the 28th of March, 1849, he had turned over to
the receiver all the property which he was ordered to take
charge of, and taken his receipt therefor, which was produced and
filed.

Replications to the answers were filed, and the cause set down
for hearing at the next term.

At the September Term, 1849, Mooney filed a motion to compel complainant to elect which suit he would prosecute; the action of unlawful detainer, or bill in chancery.

Complainant, thereupon, asked leave to file a supplemental bill, showing, that since the original bill was filed, this court had reversed the judgment of the Circuit Court in the action of unlawful detainer, and remanded the cause, with leave to complainant to file an amended declaration. That complainant did not take out the mandate, (but that Mooney did,) and had taken no steps in the case since the filing of the original bill, and intended to take none, the whole subject being before the Court of Equity, where all the matters in controversy between him and Mooney could only be properly adjusted and settled. He offered to account in the chancery cause for the rents of the said real estate, while in his possession, and to surrender it to the receiver, to be leased pending the suit in chancery. Praying that Mooney might be restrained from requiring him to proceed in the action at law.

The court refused to permit the supplemental bill to be filed, and complainant excepted.

At the March term, 1851, the cause came on to be heard, (the parties having taken the depositions of about sixty witnesses,) and the court being unable to render a decree without a statement of accounts between the parties, referred the accounts, with the evidence, to the Master, to state, adjust and report upon the same, directing him to ascertain:

The amount of the mortgage debt, with interest:

The amount of supplies, &c., furnished by Brinkley to Mooney, after the execution of the mortgage, and before he was dispossessed:

The amount paid by Brinkley to Rodgers, purchase money of the land:

The amount of reasonable and economical expenses incurred by Brinkley, in working out the stock on hand, when he took possession of the yard; taking into consideration the value of the

hire of the negro boy for the residue of the year, after Brinkley took possession of him, &c.

The reasonable profits of the tan-yard, for each year, after Brinkley took possession of it, giving Mooney credit therefor, and making annual rests, &c., and to report the balance, &c.

The Master made his report at the September term, 1851. He charges Mooney with:

The amount of the mortgage debt, $1,003 08, and interest, &c.

For supplies, &c., furnished by complainant, after execution of mortgage, &c., $178 29, with interest, &c.

Amount paid Rogers by complainant, $136 25, and interest, &c.

For expenses, &c., incurred by complainant in working out the stock, after he took possession, $727 90, without interest.

The Master credited Mooney with:

Value of hire of Duncan's negro, for remainder of year, after complainant took possession of the yard, &c., $87 75.

Hire of Hart's boy, for getting bark, &c., 18 75.

Profits of tan-yard from 16th June, 1847, the time complainant took possession, until the date of the Master's report, at $250 per annum, applying these credits annually, so as to stop interest in favor of complainant, &c.

The Master reported against allowing complainant any thing for damages done his hides by Mooney, or for missing hides; thinking the proof left it in doubt, whether the damages, &c., occurred before Mooney was turned out, &c.

Both parties filed numerous exceptions to the Master's report. The cause was finally heard at the March term, 1852.

The court, upon the facts established in the case, was of opinion, that the complainant was entitled to the relief sought by the bill; that it had jurisdiction of the matters in controversy; that complainant was entitled to occupy the position of a mortgagee, and was not a trespasser in view of a court of equity: and that even if a court of equity had not cognizance of the matters in controversy, Mooney had failed to take the objection in apt time, and in proper form.

That Mooney be perpetually enjoined from further prosecuting his action of trespass, or instituting or prosecuting any action at law, against complainant, in respect of the property aforesaid: and that the said action of trespass, and the said action of unlawful detainer be both dismissed, and the costs of each of said actions be charged upon the mortgaged property, &c.

That the said tract of land be sold by a commissioner, &c., the receiver to act as such, &c., and conveyed to the purchaser: and that Rogers also make a deed to the purchaser. That the receiver sell the leather and other property placed in his hands under the previous order of the court; and that he have the money arising from such sales in court, by the next term, &c.

That the money arising from the sale of the mortgaged property, be applied: *First*, To the payment of the costs of this suit: *Second*, To the costs of said actions of trespass and unlawful detainer: *Third*, To the payment of the amount which might be found due complainant from Mooney, in respect of the matters charged in the bill, &c., and the residue be paid to Mooney.

The court, upon the exceptions taken to the master's report, decreed as follows:

That complainant, instead of being charged with $250 per annum, profits of the tan-yeard, from the 16th June, 1847, as reported by the master, should only be charged with the sum of $100 per annum, on account of the rents and profits of said tan-yard, from the 15th of July, 1848, the day the stock on hand when he took possession, was finished up—annual rests being made—that sum being the amount the testimony in the case showed to be just and proper. That complainant was not chargeable with rents and profits of the yard during the time he used the same in tanning out the stock on hand.

That complainant was entitled to interest on the $727 90, amount of expenses incurred by him in finishing up the stock on hand from 15th July, 1848.

That the matter of damages to complainant's hides, while in charge of Mooney, was not referred to the master, but that com-

plainant was entitled to an allowance for any such damages as may have occurred, and that the master, upon the subsequent reference, should ascertain and report the same, &c.

That complainant was entitled to credit for $18, paid by him for Mooney to Hart, for negro hire, &c.

All the exceptions taken by Mooney, to the report of the master, (extending to all the items in it,) were overruled, except the one founded on the objection that the master had not credited him with the value of the tools which came into the possession of complainant, but were not embraced in the mortgage. And the court ordered that the master should take an account of the value of such tools, and credit Mooney with the value thereof, as of 16th June, 1847.

The matters of account were, therefore, re-committed to the master, with directions to correct and re-state the same, in accordance with the principles above settled, and the directions aforesaid, and that he report at the next term of the court, &c.

Mooney appealed from the decree to this court.

The testimony conduces to prove that complainant was an honest, correct business man. That Mooney, after purchasing the land of Rogers, went industriously to work, and by the assistance of complainant, who furnished the means, established the tan-yard, erected a dwelling and other improvements upon the land. He was in the habit of taking a "*spree*," occasionally; but when at home, was usually sober, hard-working, and attentive to business. Before, and about the time he was dispossessed, he seems to have become quite dissipated—was frequently seen drunk in Arkadelphia, sometimes lying upon the benches about the dram-shop doors, and occasionally in the streets; and, though, when at home, and sober, he was generally found industriously occupied in his business, perhaps a portion of the hides in the yard were damaged to some extent, for want of proper care and attention. On this point, however, there is a conflict of testimony. He had hands employed, who were in charge of the yard, &c., in his absence. When he was dispossessed, he and his

family were turned out into the woods, and complainant put into the possession of the premises: and he hired hands, furnished materials, and completed the process of tanning and finishing into leather all the hides in the yard. The appraisers summoned by the sheriff, at the time the writ of unlawful detainer was executed, valued the land and improvements at $1,000, and the personal property, including all the hides in the yard, tools, hire of Duncan's negro, &c., at $1,000. Other witnesses made a lower estimate of the value of the land and improvements. The profits of such a tan-yard were variously estimated. The witnesses examined by the master, supposed it would produce, with the number of vats sunk by Mooney, $1,000 worth of leather per annum, at a profit of 25 per cent., or $250. That the rent would be worth about $100 a year.

This is merely the outlines of the testimony, which is quite voluminous, but a detailed statement of it is not deemed necessary.

1. The defendant submitted to answer the whole bill, and did not, by demurrer, nor in his answer, object to the jurisdiction of the court of equity over any of the matters set up in the bill. Having thus submitted the cause to the cognizance of the court, it was too late for him upon the hearing, and it is too late here, to object to the jurisdiction, unless the court were wholly incompetent to grant the relief which complainant sought by the bill. *Ludlow vs. Simonds*, 2 *Caines' Cases in Error*, 40, 56; *Underhill vs. Van Cortlandt*, 2 *Johns. Ch. Rep.* 369; *Hawley vs. Cramer*, 4 *Cow.* 727; *Grandin vs. Leroy*, 2 *Paige Ch. Rep.* 509. It is better for both parties, after protracted and expensive litigation, that all the matters in controversy between them, connected with the mortgage and embraced by the bill, should be finally settled.

2. It is manifest, from the face of the mortgage, that Mooney was entitled to the possession of the land, improvements thereon, and other property embraced in the deed, with the right to carry on the tanning business, retail leather in the usual course of

trade, &c., until the 1st of March, 1848.    He had no other means of discharging the debt, and no other resources seem to have been relied upon by the parties.    On the maturity of the mortgage, the complainant had the power of sale, if the defendant was in default.

The complainant had no legal right, therefore, on the 16th of June, 1847, by the action of unlawful detainer, to dispossess the defendant, as he did, of the premises, and take them into his own possession.    The action was premature, as to the real property, and wholly unwarranted as to the personal property.    1 *Ala. Rep.* 729; 4 *Ib.* 746, and authorities cited.

If the defendant was guilty of intoxication, inattention to business, and the mortgaged property was suffering damage or waste from his neglect, &c., as alleged, the remedy of the complainant was by application to a court of equity, to place the premises in the hands of a receiver, and he had no right to seek redress by an unwarranted and abusive use of the action at law, to which he resorted.    *Cooper vs. Davis*, 15 *Conn. Rep.* 556.

Had the complainant come lawfully into the possession of the premises, after the maturity of the mortgage, and default of payment, he would have been accountable for reasonable rents, and would have been allowed the costs of necessary repairs, until foreclosure, &c.    4 *Kent. Com.* 166.    And, doubtless, upon principle, if he had completed the process of tanning and finishing the stock of hides on hand into leather, for the benefit of the defendant, he could have been entitled to reasonable and necessary expenses, incurred in so doing.

But in this case, the complainant took upon himself the responsibility of unlawfully thrusting the defendant out of the premises, and taking them under his own charge, some eight months and a half before the maturity of the mortgage, thereby depriving the defendant of the privilege of working out the stock by his own labor, and of all other profits which he might have derived from the tan-yard.    Some of the witnesses supposed the defendant could have made as much as $1,000 a year.    Thus the com-

plainant placed himself in the position of a trespasser: of one in possession without any legal right or color of title. Under such circumstances, we know of no principle of law or equity which gives him any just claim to be allowed the expenses which he thought proper to incur, in connection with the position which he had so assumed.

We must hold, therefore, that the court below erroneously allowed him the $727 90, for such expenses, with interest.

3. The court below, also, most clearly erred in taxing the costs of all three of the suits upon the proceeds of the mortgaged property, which was, in effect, charging upon defendant all the expenses of the litigation. Had the complainant prosecuted his action of unlawful detainer to final judgment, it is manifest that he must have failed therein, and been taxed with costs. It is equally clear, that defendant would have succeeded in the action of trespass, or at least, that he had good grounds to bring the action, and might have recovered his costs therein, had he not been enjoined by complainant.

It is, moreover, manifest that complainant was compelled to resort to equity, and filed this bill, mainly, for the purpose of relieving himself from the embarrassments and responsibilities consequent upon his illegal steps to dispossess the defendant. We think, therefore, that he ought, in justice, to be taxed with the costs of all three of the suits.

In all other respects, we think the decree of the court below is correct, and will be affirmed. But so much of the decree as is above held to be erroneous, must be reversed and the cause remanded for further proceedings.

Hon. C. C SCOTT, Judge, absent.