MADISON NELSON, impleaded with others, Plaintiff in Error, *v.* JAMES PINEGAR, Defendant in Error.

ERROR TO FULTON.

The material allegations of a bill in chancery not admitted or denied by the answer, must be proved by the complainant.

The allegations in this case are sustained by the records of the court before which it was tried, and those records are made exhibits in the bill by reference, and were examined by the court. This is sufficient proof.

A mortgagee is the owner of the fee as against the mortgagor, or those claiming under him, and is entitled to an injunction to prevent waste being committed on the mortgaged land.

THIS was a proceeding in chancery for injunction and relief, commenced in the Circuit Court of the county of Fulton, to the February term, 1862.

The bill alleges, that on the 12th day of July, A. D. 1858, one William Brebner became indebted unto James Pinegar, the defendant in error, in the sum of $1,760.50, secured to be paid by three promissory notes.

The bill further alleges the execution, acknowledgment, and delivery by said Brebner, together with his wife, of a mortgage to secure the aforesaid indebtedness, conveying unto the said James Pinegar, etc., subject to the usual defeasance, a part of the north-east quarter of Section fourteen, containing

31

four and a half acres. Also, part of the north-west quarter of same section, described by metes and bounds, containing forty-one acres, all in Township 8 north, Range 4 east, in said county of Fulton.

The bill further alleges, that said Brebner having failed to comply with the terms of said mortgage, the defendant in error afterwards filed in the Circuit Court of said county his bill of complaint for the foreclosure of said mortgage, against the said Brebner and wife, and one J. H. Woodin, who, it alleges, was then in possession, claiming some title to said land.

It also alleges the rendition of a decree by said court, ordering the payment to defendant in error, by said Brebner, within ten days from the date of said decree, of the sum of $1,249.10, and costs of suit, and that in default thereof the master in chancery for said county sell said real estate, after giving notice, etc. ; that out of the proceeds he pay the aforesaid indebtedness, and the balance to said Brebner ; that he execute and deliver to the purchaser a certificate of purchase, and upon failure to redeem, a deed to said premises, and ordering the delivery of the peaceable possession of said lands and of all the title papers pertaining thereto, to the purchaser of said premises, upon the execution and delivery of a deed to said purchaser by the master, and that the parties be forever barred, etc.

The bill states a sale of said premises by the master in chancery, and the purchase thereof by defendant in error, for the sum of $1,250.

The bill also alleges the making and delivery, by said master, of a certificate of purchase to defendant in error, and refers to all the papers pertaining to said foreclosure proceeding, and prays they may be taken as a part of said bill.

Said bill also alleges, that the four and one-half acre tract referred to in said bill, is chiefly valuable for the timber thereon, and that said land is not worth more than $1,250, and avers that Madison Nelson, since the purchase of said land by said defendant in error, had been, and was at the filing of the bill, cutting, felling, removing, and wasting the timber thereon

without permission, and to the damage of complainant below, by lessening said security, etc.

The bill also states, that complainant has reason to believe that J. H. Woodin, William M. Swaine, James Nelson, John Murdock, and the said William Brebner, and others unknown, have been aiding said Madison Nelson in the cutting and removal of said timber; also alleges the cutting, by said Nelson, of about two hundred trees, of the value of six hundred dollars.

And these are all the allegations in the bill.

The bill prays, that said Woodin, Swaine, James Nelson, Murdock and Brebner, may be made parties defendant to said bill, and required to answer the same, but does not waive the oath; also prays for an injunction against parties, together with Madison Nelson, restraining them from cutting, felling, removing, or wasting the timber on said four and one-half acre tract, and also that the damage sustained by reason of the cutting, etc., might be assessed by the court, and execution issue therefor; and for other and further relief.

A writ of injunction was issued out of said court, in pursuance of the prayer of said bill, and served on the defendants, Madison Nelson, James M. Nelson, and J. H. Woodin.

Afterwards, at the February term, 1862, of said court, the said Madison Nelson, J. H. Woodin, William M. Swaine, James M. Nelson, John Murdock, and William Brebner, filed their sworn joint and several answer to said bill of complaint.

William Brebner, for himself, admits in said answer the indebtedness from him to defendant in error, as charged in the bill, and the execution and delivery of the promissory notes therein stated, and also the execution, acknowledgment and delivery of the deed of mortgage therein referred to. The other said defendants say they are not advised as to said matters, and therefore neither admit nor deny the same.

And the said defendants, excepting said Brebner, further answering, state, that as to the averments in said bill of proceedings to foreclose the said mortgage, and the sale of the said premises before described, under the decree of said court

and the purchase thereof by complainant, they know nothing, and neither admit nor deny the same.

And all of the defendants, further answering, deny the allegation in said bill, that the four and one-half acre tract referred to therein is chiefly valuable for the timber thereon, and that both tracts embraced in said mortgage were not worth more than $1,250, but aver the same to far exceed that sum in value, and not to be mainly valuable for timber.

And said William Brebner admits that suit was commenced in said court for the foreclosure of said mortgage, but as to the subsequent proceedings in said court, and the sale of said land, and the amount bid therefor, not knowing, neither admits nor denies the same.

Madison Nelson admits the cutting of some timber on the land referred to, but says that none was cut or carried away for several days prior to the filing of said bill; and avers that he was not, nor was any one in his employ, engaged in cutting or carrying away timber from said land at the time of filing of said bill, but that he had desisted therefrom, and so announced to those in his employ several days prior thereto.

And respondents, Woodin and Brebner, deny that they, or either of them, assisted, aided or abetted in cutting or removing the timber from said premises.

Respondents, Swaine, James Nelson, and Murdock, admit that they did assist in removing some timber, but aver that it was prior to the filing of said bill, and that neither of them were so engaged at the time of filing said bill, as charged therein.

Respondent, Madison Nelson, denies that he cut or carried away from said premises any timber to make ties, and avers that all the timber cut thereon would not exceed in value ten dollars, and was cut by the authority of one J. H. Woodin, who was then in possession of said premises.

At the same term of said court a general replication was filed by complainant to said answer; and the defendants entered their motion to dissolve said injunction.

The cause was heard at the September term, 1862, of the Fulton Circuit Court, before Hon. C. L. Higbee, Chancellor,

when complainant introduced and read in evidence the following depositions, subject to objection and exception by defendants as to such parts thereof as are liable to exception for irrelevancy and immateriality.

*Abram Marchant* swears, that he is acquainted with the four and a half acre tract referred to in the bill, and had been for thirty-three years. About the middle of January, 1862, saw William M. Swaine with some wood. Pinegar asked him where he got it. He said, back a little way. Said Madison Nelson asked him to get it, and he was hauling for him. Wood was hickory, oak and elm. Some fit for fencing. We went on the said tract. Saw Murdock chopping poles. Saw one man chopping a big tree that had been felled; saw several chopping. Pinegar asked Nelson what right he had to cut; Nelson said he had consulted a lawer in Peoria, who told him he had a right to cut. Said he meant to cut all off said tract; said he had paid Woodin $120 or $130 for the right to cut timber. The timber was cut off clean from about one hundred and thirty square rods. Witness then describes the quality of timber cut, and swears that he would consider said four and a half acre tract valuable chiefly for the timber; also that he knows the other tract referred to in the bill, and should think the two tracts worth $1,178.50.

On cross-examination, witness says, according to his best recollection the timber was cut the fore part of the week before the injunction was served upon defendants, or there might have been a week intervening. The timber, he says, was principally saplings. Some two or three trees he thinks were suitable for hewing, and some for fencing, etc. Perhaps some two hundred rails could have been made from the timber cut. The timber on the ground for rails was worth about four dollars.

*William McCoy* swears, that he knows and has been on the four and a half acre tract. Madison Nelson, John Murdock, James Nelson and William Swaine, were hauling timber off. Madison Nelson was there when the timber was cut, and it was hauled by his orders. There were twenty-one loads, (some small loads), worth $5.25. The timber was cut about

the middle of January. There were four or five black oak trees cut, averaging about six inches at butt.

*George Marchant* swears, that he knows the four and a half acre tract; that it is valuable chiefly for timber; worth $20 an acre. Swaine said he had got his load of wood from a piece of land Nelson was at work at. He said it was for Mr. Nelson. This was near or before the middle of January, 1862. Went to where Nelson had his hands at work. Murdock was there with his team. He was trimming up some hickory poles. Saw two men chopping on a large tree of burr-oak that was felled. Madison Nelson told complainant that he meant to cut all the timber off said four and a half acre tract; that he had bought it from Woodin, and given $25 per acre for it; that he had consulted a lawyer about it, and paid out over $100 on it. Thinks there was about one acre off of which timber was cut.

*Henry Lishman* swears, that he knows the tract of four and a half acres; that it is timber land. Went over there about the 16th or 18th of January. Madison Nelson was there. Saw no one cutting. Went over the patch about the 18th of January. Asked Nelson if he had any wood to spare. Told me to take the axe, and went over this same patch, and I cut down two and one-half loads of wood poles, and ordered it hauled home. When I went over, saw complainant, Pinegar, and made an agreement with him about the wood I had cut.

The court certifies that the foregoing depositions were all the evidence offered in the case by either party.

After the hearing, the court rendered a decree, reciting the hearing of the cause " upon the bill, answer, replication and depositions, and the court had examined and inspected said evidence," and ordering and decreeing " that the said bill be dismissed as to all the said defendants except as to the said Madison Nelson; and that as to the said Madison Nelson the said injunction be made perpetual, and that the said Madison Nelson pay the costs of this suit, and that the said complainants have execution therefor as at common law."

The case is brought to this court by defendant, Madison Nelson, by writ of error, and the following are the grounds of error assigned :

The court below erred in admitting and considering improper evidence on behalf of the complainant below.

The court erred in perpetuating the injunction against defendant Madison Nelson below, and in rendering a decree against him therefor and for costs.

The finding and decree of the court below were contrary to equity and against the evidence, there being no sufficient evidence to sustain the same.

The proceedings and final decree below were otherwise irregular, informal and insufficient.

JUDD, BOYD & JAMES, for Plaintiff in Error.

I.  1.  There was no proof whatever introduced as to the indebtedness from Brebner to Pinegar, nor as to the mortgage security on the land in question, nor as to the failure to pay the indebtedness secured by the mortgage, nor as to the foreclosure proceedings, nor as to the sale, nor as to the certificate of purchase, etc., all of which were averred in Pinegar's bill, but neither admitted nor denied by Nelson's answer. The decree against Nelson, perpetuating the injunction and for costs, therefore, cannot be sustained, even if the proofs as to waste be regarded as sufficient. When matters in the bill are neither admitted nor denied by the answer, they must be sustained by proof. *De Wolf et al.* v. *Long*, 2 Gilm. 679; *Fuqua* v. *Robinson*, 5 Gilm. 128; *Dooley* v. *Stipp*, 26 Ill. 89.

2.  Material allegations of the bill not admitted by the answer, not having been sustained by proof on the hearing of the decree, will be reversed, the injunction dissolved, and the bill dismissed. *De Wolf et al.* v. *Long*, 2 Gilm. 679,683.

II.  The bill avers that Nelson, aided by the other defendants below, was, at the time of filing the bill, (17th January, 1862,) cutting and carrying away the timber on the land. There are no averments in the bill, of threats to commit waste, or as to insolvency.

Two witnesses, or the equivalent, are required to overcome the sworn answer; and it denies that Nelson, or any one in his employ, cut or carried away any timber for several days before the filing of the bill, and avers that he had desisted

therefrom, and so informed his employees several days before the bill was filed. To meet this, the following evidence is adduced by complainant below : Abram Marchant proves some cutting and hauling " about the middle of January, 1862," and, on cross-examination, shows that it was " the fore part of the week before the injunction was served," [it was served January 23, 1862,] " or there might have been a week intervening." Wm. McCoy proves cutting and hauling " about the middle of January." George Marchant swears to cutting and hauling " near or before the middle of January, 1862." And Henry Lishman swears that about the 16th or 18th of January, he (Lishman) cut two and a half loads of poles for himself; but Nelson is not clearly connected with this, and Lishman made a subsequent arrangement with Pinegar, (defendant in error,) as to the poles. This is all the evidence adduced as to the cutting or carrying away of the timber.

The answer of Nelson states that all the timber cut would not exceed in value ten dollars, and was cut on the authority of J. H. Woodin, who was in possession of the premises. There was no proof on the hearing contradicting this.

III. There were some proofs as to threats by Nelson about cutting the timber; but the bill contains no averment whatever as to threats.

The allegations and proofs must correspond, materially supporting each other. Although a good case may appear in the evidence, yet if it is variant from the one stated in the bill, the bill must be dismissed. *McKay* v. *Bissett et al.*, 5 Gilm. 505; *Rowan* v. *Bowles et al.*, 21 Ill. 19.

L. W. Ross, for Defendant in Error.

BREESE, J. It is objected against the decree in this case, that no proof was exhibited of the mortgage and decree, and the subsequent proceedings under it. The answer of all the defendants except Brebner, the mortgagor, neither admitted nor denied the allegations of the bill in these particulars, and the rule is well settled in this court, that the material allegations of a bill in chancery, not admitted or denied by the answer, must be proved by the complainant. This rule will

be applied in all proper cases, but this is not one demanding its application. The complainant claims the land as mortgagee in fee of Brebner, one of the defendants, and the execution of the mortgage and its forfeiture are fully admitted by him. He was the only person having an interest in the land, and he admits the sale and conveyance of it. This mortgage, and the proceedings under it in chancery, whereby it was foreclosed and the premises sold, are made exhibits in the bill by reference. They are a part of the files and records of the court that heard the cause, and were examined and considered by the court, as the decree expressly states. For the purposes of this case, the allegations of the complainant were sufficiently proved.

But if the proceedings to foreclose were not proved, still a case is made out against the defendants by the exhibit of the mortgage alone. The complainant, as mortgagee of the land, was the owner of the fee as against the mortgagor and all claiming under him. He had the *jus in re* as well as *ad rem*, and being so, is entitled to all the rights and remedies which the law gives to such an owner. *Delahay* v. *Clement*, 3 Scam. 202; *Vansant* v. *Almon*, 23 Ill. 33; *Carroll* v. *Ballance*, 26 Ill. 17.

That the owner of land has a right to an injunction to stay waste being committed upon it, it is unnecessary to argue. A mortgagee of the fee, has the same right. *Robinson* v. *Litton*, 3 Atkins, 209; *Brady* v *Waldron*, 2 Johns. Ch. 148, and this, in a State where courts do not hold the mortgagee to be the owner of the fee. If but a mere security for the debt, an injunction is allowed to prevent a deterioration of that security. The same doctrine obtains in Connecticut. *Cooper* v. *Davis*, 15 Conn. 561. And in Maryland. *Salmon* v. *Claggett*, 3 Bland Ch. R. 126; and there, when the mortgage debt was not due. *Murdock's Case*, 2 id. 461.

It is, on the whole, doubtful, if the mortgagee, before possession taken, has any other remedy except by injunction, to prevent waste. On the other facts, the proof was sufficient. The decree is affirmed.

*Decree affirmed.*