## VERRY and Others v. ROBINSON.

PARTITION OF LANDS—WIFE'S INCHOATE INTEREST.—A executed a mortgage, in which his wife did not join, upon his interest in certain lands, held by him as tenant in common with others. The mortgage was afterward foreclosed, and the land bought in at the sheriff's sale by B, the mortgagee. B afterward, and in the life-time of A, instituted a suit for partition against the persons who had held as tenants in common with A, and upon a report that the land was not susceptible of partition, an order of sale was made, and B became the purchaser. After the death of A, his widow brought an action for partition against B, claiming to have one-third of the undivided interest of her husband set apart to her. *Held*, that as the wife of A did not join in the execution of the mortgage, the title derived by B from the sheriff's sale was subject to her contingent interest, and this being the title represented by B in the subsequent proceedings for partition, the purchaser under those proceedings could acquire no greater interest than that held by B.

*Held*, also, that the contingent interest of A's widow was not divested by the sale under the proceedings for partition.

APPEAL from the *Jefferson* Common Pleas.

ELLIOTT, J.—*Euphemia Robinson* filed a complaint in the Court of Common Pleas of *Jefferson* county, alleging that she was seized, in fee, as the widow of *Thomas J. Robinson*, deceased, of *one-third* of *five* undivided *ninths* of a certain lot in the city of *Madison*, and that the defendants, *Mary*

*Jane Verry*, the widow, and others, the children, of *John Verry*, deceased, were seized of the residue of said lot, and praying partition, &c. The defendants answered in denial. The issue was submitted to the court for trial, who found the plaintiff entitled to *one-third* of *five-ninths* of the lot, in fee, as claimed in the complaint, and appointed commissioners to make partition thereof accordingly.

The commissioners having reported that the property could not be divided "without great injury thereto, and to the interest of the owners thereof," the court ordered and decreed that the same should be sold, and the proceeds divided among the proprietors, according to their respective interests, and appointed *Richard J. Bright* a commissioner to sell the same, on terms specified in the order.

The defendants, having taken and filed the proper exceptions to the several findings and orders of the court, and having filed an appeal bond, which was approved by the court, thereupon appealed from the finding of the court, that the plaintiff was seized of *one-third* of *five-ninths* of said lot, and from the final order for the sale thereof, based on said finding.

The finding and order of the court below are based on an agreement of the parties, as to the facts of the case, which is made a part of the record, and is, in substance, as follows:

That the plaintiff was married to *Thomas J. Robinson* in the year 1845, and lived with him, and was his wife, up to the time of his death, in *November*, 1863. That prior to the year 1845, the father of *Thomas J. Robinson* died intestate, seized in fee simple of lot number *seven*, described in the complaint, leaving a wife and nine children, to whom the lot descended. The wife died before 1853. That prior to the year 1853, said *Thomas J. Robinson* purchased, and had conveyed to him in fee, the interests of four of the other children in said lot, and consequently then held five undivided ninths thereof. That, in *September*, 1853, said *Thomas J.* mortgaged said five-ninths of the lot to *John*

*Verry,* the husband of the defendant *Mary Jane Verry,* and the father of the other defendants, to secure a debt; but that his wife, the plaintiff in this suit, did not join in said mortgage. That, at the *September* term, 1856, of the *Jefferson* Circuit Court, *John Verry* obtained a decree of foreclosure on said mortgage, against said *Robinson,* and for the sale of said five-ninths of the lot, for the payment of said debt; to which suit, *Euphemia,* the plaintiff, was not a party. That a proper execution was subsequently issued on said decree, and the five-ninths of said lot was sold and conveyed by the sheriff to said *John Verry.* That said *John Verry* subsequently instituted proper legal proceedings in the *Jefferson* Circuit Court, against the other proprietors of said lot, for partition, he claiming five-ninths thereof; and such proceedings were had therein, that the court appointed commissioners to make said partition, and to set off, in severalty, to said *Verry,* five-ninths of the lot, and one-ninth to each of the other four proprietors. That the commissioners so appointed reported to the court that, in their judgment, the lot could not be so partitioned, without great damage to the interests of said owners; and, thereupon, the court, on motion of said *Verry,* ordered that said lot be sold, as provided by the statute, and that the proceeds be divided among the owners, in proportion to their respective interests, and appointed a commissioner to make said sale. That said commissioner, after having the lot duly appraised, sold the same, at public auction, to said *John Verry,* for $1,200, two-thirds of the appraised value thereof. That said sale was reported to and confirmed by the court. That said *Verry* paid the purchase money in full, but that before a deed was executed to him, both he and the said commissioner died. That afterward, on the petition of the wife and heirs of said *John Verry,* defendants in this suit, the lot was conveyed to them, under said purchase, by a commissioner appointed by the court for that purpose. That, in *January,* 1864, and before the commencement of this suit, the plaintiff requested said *Mary Jane Verry,* and

the other defendants, to set off to her, or account to her for, her undivided interest in said lot. That the said *Thomas J. Robinson* and *John Verry* both died intestate, and that said proceedings in partition, and said sale and conveyance, all took place in the life-time of said *Thomas J. Robinson*, but neither he nor the plaintiff in this suit was made a party thereto.

The agreement also extends to matters relating to the improvements on the lot, at the date of the mortgage to *Verry*, and those made by *Verry* after his purchase, but as no question is raised in this court involving those matters, a statement of them in this opinion is unnecessary.

It was also agreed that all matters of defense should be given in evidence under the general denial.

Under this state of facts it is insisted by the appellants that *Euphemia Robinson*, the plaintiff below, has no interest in or to any part of said lot, and that the finding of the court to the contrary, and the final order of sale, is therefore erroneous, and this presents the only question for the consideration of this court.

The statute of descents enacts that, "If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her, in fee simple, free from all demands of creditors," &c. 1 G. & H. § 17 p. 294,. Section 27 of the same act provides that "A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and, also, of all lands in which her husband had an equitable interest at the time of his death." And the 35th section declares that "no act or conveyance, performed or executed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law, nor any sale, disposition, transfer or incumbrance, of the husband's property, by virtue of any decree, execution or mortgage, to which she shall not

be a party, except as provided otherwise in this act, shall prejudice or extinguish the right of the wife to her third of his lands, or to her jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

In the case at bar, *Thomas J. Robinson*, the husband of *Euphemia*, the plaintiff, was seized in fee of the real estate in controversy during the coverture, and in 1853 mortgaged it to *Verry*, but his wife, *Euphemia*, did not, in any form, join in or become a party to the mortgage. The title of *Thomas* was sold on a foreclosure of the mortgage, and purchased in by *Verry*; but *Euphemia* was not a party to that suit, or in any manner affected by the decree or sale. Nor was she a party to the proceedings for partition prosecuted by *Verry*, and upon which the lot was sold and purchased in by him. *Thomas J. Robinson*, the husband, died in 1863, leaving the plaintiff, his wife, surviving him.

These facts would seem to bring the case within the provisions of the statute, and entitle the plaintiff to one-third of the *five-ninths* of the lot, of which her husband was seized during the marriage.

It is conceded by the appellants that the purchase by *Verry* of the interest of *Thomas J. Robinson*, at the sale under the mortgage, did not divest the contingent interest of *Euphemia*, his wife. But it is insisted that the subsequent sale of the lot, under the proceedings for partition, by destroying the co-tenancy, invested *Verry*, the purchaser, with an absolute fee in the entire lot, and divested the contingent interest of the plaintiff. The argument in support of the position is understood to be, that the act of *Robinson*, in executing the mortgage, and the act of the law in the foreclosure and sale, made *Verry* a co-tenant with the other owners, and invested him with the same right that *Robinson* had, before *Verry* took his place, under the sale, and that as long as the tenancy in common existed, the contingent right of the plaintiff was not affected by the fact that the title of her husband had passed to *Verry*, but that the latter stood in the same relation to the contingent

right of the wife, that *Robinson*, the husband, would, if he had continued to hold the interest purchased by *Verry.* And hence, it is further argued, that the sale under the proceedings for partition, instituted by *Verry*, as the representative of *Robinson*, had the same effect in divesting the contingent interest of the wife, that it would have had if *Robinson*, the husband, had continued to hold the fee, and had instituted the proceedings in partition.

This position, we think, cannot be maintained. *Verry*, as the purchaser of *Robinson's* title under the mortgage, did not stand in the same relation, in all respects, to the contingent right of the wife that *Robinson*, the husband, did before the mortgage. Indeed, if the conclusion arrived at by the appellants' counsel, as to the effect of *Verry's* purchase under the proceedings for partition, is correct, the difference in their relations to the interest of the wife would be radical. Holding the title of *Robinson*, *Verry* instituted the proceedings for partition, under which he became the purchaser of the lot, and now claims that by virtue of that sale, the contingent right of Mrs. *Robinson* became divested and lost. But if *Robinson* had continued to hold the title, and had instituted the proceedings for partition, and become the purchaser, it is clear that the interest of his wife, in that event, would have been increased, instead of destroyed, as claimed by the appellants.

By the sale under the mortgage, the title of the husband, which, prior to the mortgage, was directly united with the contingent right of the wife, growing out of the marriage relation under the law, became severed from it. The title was no longer a unit. The estate of the husband, out of which sprang the claim of the wife, became divested and passed into the hands of a stranger, not an absolute and unincumbered fee, but subject to the contingent claim of the wife, depending, however, upon the then uncertain contingency that she should survive her husband. This suggests the argument which, to our minds, settles, conclusively, the question under discussion.

*Robinson* was seized of an unconditional and unincumbered fee in the five-ninths of the lot. The contingent right of the wife is a mere incident, under the law, of that seizin of the husband, and though the entire title was in the husband, he could neither mortgage nor sell the interest of the wife, unless she voluntarily joined in the conveyance. But she did not join in the mortgage, and therefore both the mortgage and the subsequent purchase of *Verry* under it, were subject to the contingent right of Mrs. *Robinson*. In that purchase, *Verry* did not pay for or acquire a title to that right. He did not own it, and his title was therefore subject to it.

In the suit for partition, he represented the title or interest acquired by his purchase under the mortgage, and no more, and the sale of the lot, so far as *Verry's* interest was concerned, could not invest the purchaser with any better title, or greater interest in the property, than was held by *Verry*, and which he represented in that suit.

This position is not only sustained by the statute quoted in a previous part of this opinion, and by reason and necessity, but also accords with the letter of the statute under which the sale, in the proceedings for partition, was made.

The 21st section of the statute concerning the partition of lands, 2 G. & H. 365, provides that "Whenever it shall appear to the court that the purchase money for the land sold has been duly paid, the court shall order such commissioner, or some other person, to execute conveyances to the purchaser, which shall bar all claims of such owners to said lands, as effectually as if they themselves had executed the same."

We do not stop to discuss the question whether *Verry*, by his purchase under the partition, did more than to acquire the title of the other tenants in common, and whether, in contemplation of law, his title to the five-ninths did not remain in him, in the same condition that it would if he had acquired the title of his co-tenants by private purchase

from them; but we place the case on the broad ground that if the lot had been purchased at the sale under the proceedings for partition by a stranger to the record, it would not have divested the contingent right of the plaintiff in this suit. It is not intended to controvert the position assumed by counsel, that the rights of the wife in her husband's real estate are subject to legislative control while they remain *inchoate.* Nor do we discuss the question as to the effect of various statutory provisions, authorizing the appropriation of lands for public use, as we do not think that the authorities referred to, on that and kindred subjects, throw any light on the question under discussion here.

We are referred to the case of *Weaver* v. *Gregg,* 6 Ohio St. R. 547, which is claimed to be an authority in point, in favor of the appellants. That was a petition for dower under the statute of *Ohio.* The husband of the plaintiff, during the coverture, was seized as tenant in common of one undivided fourth part of certain lands. Proceedings for partition were instituted, but the lands were adjudged not to be susceptible of partition, and were sold by the sheriff, by order of the court, under the provisions of the statute, and the proceeds divided, during the lifetime of the husband. It was held that the sale of the lands, under the proceedings for partition, divested the inchoate, contingent, dower interest of the wife. Mr. Justice BRINKERHOFF, in delivering the opinion of the court, says: "The right of dower in the wife subsists in virtue of the seizin of the husband; and this right is always subject to any incumbrance, infirmity, or incident which the law attaches to that seizin, either at the time of the marriage, or at the time the husband became seized. A liability to be divested by a sale in partition is an incident which the law affixes to the seizin of all joint estates; and the inchoate right of the wife is subject to this incident. And when the law steps in and divests the husband of his seizin, and turns the realty into personalty, she is, by the act and policy of the

law, remitted, in lieu of her inchoate right of dower in the realty, to her inchoate right to a distributive share of the personalty into which it has been transmuted."

We do not controvert the correctness of this decision. It is not in point in the case at bar, and therefore we decide nothing in reference to it. There the sale was under proceedings for partition, during the seizin and life of the husband; his seizin was divested by the act of the law, and his entire interest in the land sold and converted into personalty and paid to him. But here, the husband mortgaged his interest, subject to the inchoate, contingent right of the wife, and *Verry's* purchase of that interest, under the mortgage, did not divest the contingent right of the wife; and hence, in the subsequent proceedings in partition, he did not represent any greater interest than that acquired by his purchase under the mortgage.

The principle involved in this case, we think, was settled by this court, in accordance with the opinion expressed here, in the case of *Rank* v. *Hanna et al.*, 6 Ind. 20.

The judgment is affirmed, with costs.

*J. W. Chapman, H. W. Harrington* and *C. A. Korbly*, for appellants.

*C. E. Walker* and *A. D. Matthews*, for appellee.