*T. B. Adams* and *F. Berry*, for appellee.

———o———

## FLETCHER *v.* HOLMES.

DECENT.—*Widow.*—*Right in Real Estate of Deceased Husband.*—The widow takes her interest as such, under our statute, in the lands of her deceased husband, not as dowress, but as an heir takes, by descent from her husband. (FRAZER, J., dissenting.)

MORTGAGE.—*Only a Lien.*—It is settled in this State, that a mortgage of land is only a lien on the land as a security for the debt, the legal title remaining in the mortgagor, subject to such lien.

SAME.—*Foreclosure.*—*Parties.*— *Wife.*—Where a husband purchases lands during marriage, and at the time of the purchase mortgages said lands to se- ·cure the consideration thereof, his wife not uniting in the.mortgage, she is not a necessary party to a suit to foreclose the mortgage in the lifetime of the husband. (FRAZER, J., dissenting; and GREGORY, C. J., concurring. only where the value of the mortgaged premises at the time of the foreclosure is not greater than the debt.)

SAME.—Where such a mortgage was so executed before the present law of descents came in force, and the mortgage was foreclosed, the wife not being· made a party, and the lands were sold under the decree, in the lifetime of the husband, after that law took effect;

*Held*, that the question of the right of the widow of the mortgagor to redeem was the same as if the mortgage had been executed under the present law.

APPEAL from the Marion Civil Circuit Court.

This suit was originally brought by Fletcher, the appel- lant, against Holmes and others.

The facts presented by the record, so far as a statement of them here is deemed necessary to a proper presentation and understanding of the questions raised in this court, are as follows:—

On the 1st of November, 1853, Allen May, being then the owner of two hundred and forty acres of land, situate in Marion county, Indiana, since called the "Holmes farm," executed a mortgage thereon to Isaac Pugh, to secure the payment of four promissory notes, given by him to said Pugh, for the sum of five thousand dollars each.

On the 29th day of December, 1852, the Peru and Indianapolis Railroad Company sold and conveyed, by deed in fee simple, to said May and one Ellis, specified parts of outlots 137 and 138, in the city of Indianapolis, and, on the same day, May and Ellis executed to the railroad company a mortgage on the same property, to secure the payment of the purchase-money—for $11,856. Sinah May, the wife of Allen May, did not join in the mortgage.

May and Ellis subsequently divided the property so purchased, and Ellis paid to the railroad company one-half the purchase-money. The residue remaining unpaid, the railroad company subsequently brought suit in the Marion Circuit Court, and on the 22d of November, 1855, recovered a judgment, by agreement of the parties, against May alone, for the sum of $6,960.62, and a decree of foreclosure of said mortgage as to May's moiety of the property mortgaged. Sinah May was not made a party to the suit, nor did the complaint or mortgage show that the mortgage was given to secure the purchase-money of the property mortgaged.

On the 28th day of November, 1855, the Peru and Indianapolis Railroad Company assigned said judgment and decree to Fletcher, the appellant; and on the 30th day of May, 1857, the sheriff of Marion county, by virtue of a decretal order, issued on said judgment and decree, sold the property therein described, known as the "Soldiers' Home," to Fletcher, for the sum of nine hundred and fifty dollars, of which there was applied to the judgment the sum of eight

hundred and ninety-eight dollars, and fifty-two dollars was applied to the costs.

On the 8th day of July, 1857, Pugh recovered a judgment in the Marion Circuit Court against May, for $12,165, the balance due on his notes, and a decree of foreclosure on the mortgage on the "Holmes farm," given to secure the same. This suit was instituted subsequent to the date of the judgment in favor of the Peru and Indianapolis Railroad Company against May.

On the 29th of March, 1858, Pugh assigned his judgment and decree to the appellee, Holmes. An order of sale was subsequently issued thereon and placed in the hands of the sheriff of Marion county, who, by virtue thereof, advertised the "Holmes farm" for sale on the 10th of May, 1862; on which day, and before the sale, Fletcher tendered to Holmes $15,940 in payment of said judgment, and as a redemption of said land from said mortgage—the sum tendered being more than sufficient for that purpose. (He also tendered, at the same time, the further sum of twelve hundred dollars, on a judgment in the Circuit Court of the United States, District of Indiana, in favor of one Bowers against May, under which Holmes held a claim; but no question is presented here as to that judgment.) The tender was refused, and thereupon the appellant commenced this suit, as the assignee of the judgment in favor of the Peru and Indianapolis Railroad Company against May, for the redemption of the Holmes farm, the mortgage to Pugh, and the judgment thereon, claiming the right to redeem as a judgment creditor of said May, under said assignment; said judgment being a lien on said farm, junior to said mortgage, but prior to the foreclosure thereof. Process was served before the property was offered for sale, but the sheriff proceeded and sold the farm to Holmes, and executed to him a deed therefor.

Numerous issues were formed, and a trial was had, which resulted in a verdict and judgment against the appellant;

which was subsequently reversed by this court (25 Ind. 458), and the cause remanded for a new trial.

Subsequently, in the circuit court, Holmes filed a cross-complaint, to redeem the Soldiers' Home property purchased by the appellant under the decree of foreclosure of the mortgage to the Peru and Indianapolis Railroad Company. The cross-complaint, in addition to the recital of many of the facts hereinbefore stated, alleged that Sinah May, as the widow of Allen May, became entitled, upon the death of said Allen, to an undivided third part of the Soldiers' Home property, purchased by the appellant under the decree of foreclosure of the mortgage to the railroad company; that said Sinah had transferred to the defendant, Holmes, by deed, an undivided one-half of her third of said property. (It appears that the deed referred to conveyed, in fact, to Holmes, one undivided half of the property, instead of an undivided half of one-third, as alleged.) It is alleged, that the appellant has for many years enjoyed the rents and profits of the premises, and received large sums of money on that account; that he had sold a part of said property, which is described, for sums, amounting in the aggregate to $5,875, but that said sales were made subject to the interest of said Sinah, and that the purchasers thereof still hold the same subject to her interest.

The cross-complaint does not, in terms, admit that the mortgage given by May and Ellis to the railroad company was given for the purchase-money of the same property, but it contains the following averments in reference thereto:

"That because appellant insists that because the mortgage debt was for purchase-money of the premises (of which neither Holmes nor the widow has any knowledge), and that the widow has no right as against the purchase-money, Sinah May, the widow, on the 10th of June, 1867, demanded of appellant an accounting and statement showing the amount that would be due him on the mortgage after deducting money received from sales and rents, announcing their willingness to pay any balance that might

be found due on such accounting, which demand appellant refused. That defendant believes that upon strict accounting it would be found that not more than four thousand five hundred dollars were due appellant, and that he, defendant Holmes, on behalf of himself and Sinah May, tendered that sum to appellant on the 10th day of June, 1867, and demanded that one-third of the premises should be set off to them; but that Mr. Fletcher refused the tender, and refused to set off to them one-third of the property, or to recognize their interest in the property or their right to redeem. That defendant still offers to pay appellant any sum that may be found due him, and to redeem the premises."

Prayer, that an account may be taken, and the amount due the appellant on the railroad foreclosure judgment ascertained; that commissioners may be appointed to set off one-third of the property to the defendant Holmes, and Mrs. May, and that the other two-thirds go to the creditors —to be ascertained—of Allen May.

A demurrer was filed to the cross-complaint, which the court overruled.

The appellant excepted to the ruling, and then filed an answer of four paragraphs.

1st. The general denial.

2d. That the money secured by the mortgage of Ellis and May to the railroad company, under which the appellant claims, and against which the cross-complaint seeks redemption, was purchase-money due by Ellis and May to the railroad company; and that the mortgage was executed by Ellis and May simultaneously with the deed of the railroad company conveying the property to them.

The third and fourth set up the statute of limitations.

Demurrers were sustained to the second, third, and fourth paragraphs, to which the appellant excepted.

The cause was at first submitted to a jury on the issues made as above, and upon divers other issues that were afterwards withdrawn. Subsequently, the case was withdrawn from the jury and submitted to the court for trial on the

issues above stated, pursuant to the following agreement of parties:

"It is agreed in this case that the defendant, Holmes, shall, and he hereby does, withdraw all his answers herein, except the general denial and his supplemental answer and cross-complaint. And the plaintiff withdraws all his replies to the said answers of Holmes so by him withdrawn.

"And this cause shall now be submitted to the court, the jury being discharged by agreement of the parties, upon the issues remaining.

"In the event that the case shall be decided in favor of said defendant, Holmes, on his said supplemental answer and cross-complaint, and, on appeal, the Supreme Court should be of the opinion that said finding was erroneous, no final judgment shall be pronounced or directed by the Supreme Court in the cause; but the same shall be returned for a new trial, with leave to the said Holmes to reinstate the answers so withdrawn, or to make any other defense to which he may be legally entitled."

On the final hearing, the court, after having found the facts specially, in substance as they appear in the foregoing statement, rendered the following judgment and decree:

"It is therefore considered, adjudged, and decreed by the court, that the said plaintiff, Stoughton A. Fletcher, as the assignee and owner of said judgment and decree, rendered in favor of said president and directors of the Peru and Indianapolis Railroad Company, against said Allen May, is entitled to redeem said premises described in said complaint, and that the said sum of seventeen thousand one hundred and forty dollars, heretofore tendered by said plaintiff to said defendant, William C. Holmes, and which was by the plaintiff paid into court, and which is now in this court, ready for said Holmes, if he will receive the same, was and is a sufficient tender, and was and is a sufficient sum to entitle him, said plaintiff, to redeem said premises.

"And it is further considered, adjudged, and decreed that the said plaintiff shall be, and is, by virtue of this decree,

substituted to all and singular, the rights and equities of the said defendant, William C. Holmes, in, to, and over said premises, and to all rights therein claimed by him under the sale thereof under said judgment in favor of said Bowers, against said May, and said judgment in favor of said Isaac Pugh against said Allen May.

"Said premises are described as follows, to wit: The north-west quarter of section twenty-five (25), township sixteen (16), north of range two (2) east, containing one hundred sixty acres. Also, the east half of the south-east quarter of section twenty-three (23), township sixteen (16), north of range two (2) east, containing eighty acres. Also, the north-east quarter of section twenty-six (26), of the same township and range, containing one hundred and sixty acres.

" And it is further considered, adjudged, and decreed that said premises be sold by the sheriff, upon a duly certified copy of this decree, to be issued by the clerk of this court, as other lands are sold on execution, without any relief whatever from valuation or appraisement laws; and that out of the proceeds of such sale there shall be paid, first, the costs of this suit, to be taxed; and, next, there shall be paid to the plaintiff, first, the sum of twenty-two thousand seven hundred and sixty-four dollars and fifty cents, being the said amount of money so tendered by said plaintiff to said defendant Holmes, to redeem said premises, with interest thereon from the time of such tender; and, second, the sum of ten thousand nine hundred and eighty-two dollars and eighty-four cents, being the balance due, with interest, to this time on said judgment of the president and directors of the Peru and Indianapolis Railroad Company against said Allen May, assigned to the plaintiff as aforesaid. Making, in all, the sum of thirty-three thousand seven hundred and forty-seven dollars and thirty-four cents ($33,747.34), to be paid, with accruing interest thereon, out of the proceeds of such sale to the plaintiff. And it is ordered and directed

that the remainder, if any, of the moneys arising from such sale be paid over to said Wm. C. Holmes.

"But the foregoing is, however, subject to the further provisions of this decree, that is to say:

"It is further considered, adjudged, and decreed by the court, that said Holmes, as grantee of said Sinah May, widow of said Allen May, deceased, is entitled to redeem said premises described in his cross-complaint, to wit: Lots numbered 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 30, 32, 34, 36, 38, 40, and 42, in Ellis & May's subdivision of the east part of out-lot 138, in the city of Indianapolis; also, the undivided one-half of all that part of out-lot 137 of the donation lands of the city of Indianapolis, which was included in the mortgage, as hereinbefore described; also, the undivided one-half of the residue of that part of out-lot 138 which was included in the mortgage and not in the said subdivision; by the payment to said Fletcher, or to the clerk of this court, for his use in relation hereto, the full amount of said judgment in favor of said Peru and Indianapolis Railroad Company, against said May, together with interest to the date of payment from the date of the rendition of the same, to wit, from the 22d day of November, 1855; deducting from said judgment the amount of the purchase-money of said sale of said premises by the sheriff to said Fletcher, to wit, the sum of eight hundred and ninety-eight (898) dollars, as of the date of said sale, to wit, the 30th day of May, 1867, amounting to the sum of $10,880.74; and the payment of the further sum of four hundred and eighty-four dollars and eighty-one cents, being the one-third of the amount, including interest, paid by said Fletcher for taxes, &c., on said premises.

"And it is further considered, adjudged, and decreed by the court, that upon the payment of said Holmes to said Fletcher, or to the clerk of the court, of said sums in addition to the sum of four thousand five hundred dollars, so tendered and paid into court as aforesaid, as will amount, in the aggregate, to the judgment, interest, and taxes afore-

said, then the said Holmes shall be entitled to, and is hereby adjudged to be the owner of, the undivided one-third of the interest in said premises last above described, and the title of the same shall be, and is hereby, confirmed in him, free and discharged from any and all claims and liens of the said Fletcher, under and by virtue of said judgment and sheriff's sale, and payment of any tax assessment hereinbefore specified; and that said Holmes shall have a lien upon the remaining undivided two-thirds of said premises for payment to him of the two-thirds of the amount necessary to be paid by him as aforesaid to effect said redemption.

"And it is further ordered, adjudged, and decreed by the court, that if said Fletcher, as the owner of two-thirds of the premises, after redemption as aforesaid, shall fail to pay to said Holmes the said two-thirds of the amount so paid by him as aforesaid, within six months after the redemption by said Holmes, herein provided for, then that said two-thirds of said premises, undivided, shall be sold to pay said Holmes the two-thirds of said sum so paid by said Holmes in redemption as aforesaid. Such sale shall be without relief from valuation or appraisement laws, upon a copy of this decree, under the hand of the clerk and the seal of this court, as other lands are sold upon execution.

"And it is further considered, adjudged, and decreed, that upon said redemption being made by said Holmes, as hereinbefore provided for, said judgment and decree in favor of the Peru and Indianapolis Railroad Company shall be deemed to be fully paid and satisfied, and the clerk of this court shall refund to said Fletcher the said sum of $17,140 so tendered by him as aforesaid. But if said Holmes shall fail to redeem said premises last above described, by the the payment to said Fletcher, or to the clerk of this court, the sum due said Fletcher as aforesaid, within thirty days from this time, then said Fletcher may proceed to redeem said premises first herein described, as hereinbefore provided for.

"It is further considered, adjudged, and decreed that said

Fletcher shall recover his costs herein laid out and expended up to the time of filing the cross-complaint herein; that if said Holmes shall redeem, as herein provided for, he shall recover his costs from and after the filing of the cross-complaint. But if said Holmes shall not reedeem, then said Fletcher shall recover his entire costs in this suit."

The appellant excepted to the decree, and filed a motion for a new trial; which was overruled, and the ruling excepted to.

Elliott, J.—The case is one of more than ordinary importance, and involves questions intricate in their character, and somewhat difficult of a satisfactory solution. But we are greatly aided in their examination by arguments, on either side, prepared with much labor, care, and ability.

The first and, perhaps, the most important question, to which the attention of the court is directed, is, has Mrs. May, as the widow of Allen May, or Holmes, as her grantee, the right, under the facts in the case, to redeem the lands purchased by the appellant, at the judicial sale, under the mortgage executed by May and Ellis to the Peru and Indianapolis Railroad Company?

This question is discussed by counsel on the error assigned in overruling the demurrer to the cross-complaint of Holmes.

The fact that the mortgage to the railroad company was given to secure the purchase-money for the property mortgaged, is not directly admitted by the cross-complaint; nor is it, in terms, denied. It is stated that the appellant insists that it was given for the purchase-money, and that, therefore, Mrs. May had no interest in the land as against the mortgage; that neither Holmes nor Mrs. May have any knowledge of the fact, but because it is so claimed, Holmes offers to redeem. It is directly averred in the second paraagraph of the appellant's answer to the cross-complaint, to which the court sustained a demurrer, that the mortgage was given for purchase-money of the mortgaged premises. The question of the materiality of the fact is therefore

Fletcher v. Holmes.

raised by the appellant's exception to that ruling. Besides, the fact was so found by the court, and the appellee's counsel base their argument on the assumption that the mortgage was so given.

Indeed, were it otherwise, Mrs. May would clearly have no right to redeem; her claim would be paramount to the mortgage, as she did not join in it, and she could recover her interest in the property without the necessity of redeeming (unless the fact that the mortgage was executed before the statute of descents of 1852 came into force defeated her claims, or rendered a redemption necessary—a question that will be noticed herafter). But if the widow held an interest in the property paramount to the mortgage, the cross-complaint would, in that event, be bad, for the reasons that the matter set up would have no relation to the subject matter of the original action, and could not, in any manner, affect the rights of the parties involved in that suit.

The question whether the facts alleged in the cross-complaint show a right in Mrs. May to redeem, will be examined on the assumption that the mortgage was given for the purchase-money of the property mortgaged.

The material facts of the case, bearing on the question, may be briefly stated as follows:

On the 29th of December, 1852, the Peru and Indianapolis Railroad Company sold and conveyed in fee to May and Ellis certain lots of land, and, on the same day, May and Ellis executed to the railroad company a mortgage on the same land, to secure the payment of the purchase-money. May and Ellis subsequently divided the property purchased, and Ellis paid to the railroad company one-half of the purchase-money secured by the mortgage. The other moiety remaining unpaid, the railroad company brought suit to foreclose the mortgage, and on the 22d of November, 1855, recovered a judgment in the Marion Circuit Court, by agreement of the parties, against Allen May alone, for $6,960.62, and a decree of foreclosure of said mortgage as to his moiety of the property. On the 24th of November, 1855, the

railroad company assigned the judgment and decree to the appellant. On the 30th of May, 1857, the sheriff of Marion county sold and conveyed the lands described in the decree, by virtue of an order of sale issued thereon, to Fletcher, the appellant, for nine hundred and fifty dollars.

In July, 1860, and after the foreclosure of the mortgage, and the sale and conveyance of the property to Fletcher, Allen May died, leaving Sinah May, who was his wife at the date of the mortgage, surviving him as his widow. Mrs. May did not join in the mortgage, nor was she made a party to the foreclosure suit.

In 1867, Mrs. May claimed an interest in the land, as the widow of Allen May, which she conveyed to Holmes, the appellee, and Holmes, by virtue of that conveyance, claims the right to redeem the property purchased by Fletcher under the mortgage.

It is not claimed by counsel for the appellee that Mrs. May has any interest in the land paramount to the mortgage. But it is insisted that, as the wife of the mortgagor, she had a contingent interest in the equity of redemption, even during the lifetime of her husband, which entitled her to redeem the land from the mortgage, and made her a necessary party to the suit for its foreclosure; and that, as she was not made a party to that suit, she still has the right to redeem by paying the mortgage debt. It is conceded that if Mrs. May had been made a party to the foreclosure suit, her right would have been barred. The right set up by the cross-complaint is, therefore, made to turn upon the question, was Mrs. May a *necessary* party to the suit to foreclose the mortgage?

This leads to a consideration of the relation of the wife to the real estate of the husband during coverture, and the nature of her rights therein, as his widow, after his death. These, whatever they may be, are in this State defined by statute.

It is declared by section sixteen of the statute of descents, which came into force on the 6th of May, 1853, that "ten-

ancies by courtesy and dower are hereby abolished." 1 G. & H. 294. The same statute contains various provisions conferring on the widow certain rights in the real estate of of her deceased husband. These provisions, so far as they have any material bearing on the question under consideration, are contained in the following sections:

"XVII. If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors: *provided, however,* that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only as against creditors."

"XXVII. A surving wife is entitled, except as in section seventeen excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and, also, of all lands in which her husband had an equitable interest at the time his death: *provided,* that if the husband shall have left a will, the wife may elect to take under the will instead of this or the foregoing provisions of this act."

"XXXI. Where a husband shall purchase lands, during marriage, and shall, at the time of purchase, mortgage said lands to secure the whole or part of the considerations therefor, his widow, though she may not have united in said mortgage, shall not be entitled to her third of such lands, as against the mortgagee or persons claiming under him; but she shall be entitled to the same as against all other persons."

"XXXV. No act or conveyance, performed or executed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law; nor any sale, disposition, transfer, or incumbrance, of the husband's property, by virtue of any decree, execution, or mortgage, to which she shall not be a party, except as provided otherwise in this act, shall prejudice or extin-

guish the right of the wife to her third of his lands or to her jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

It is claimed, on behalf of the appellant, that the widow takes under the statute as *heir* of her husband, by descent from him, and that the rules and maxims relative to inheritance, and not those relating to dower, obtain, and must govern in the determination of her rights.

It is settled, by repeated decisions of this court, that the widow takes the estate conferred on her by statute, as an heir, and by descent from her husband. *Frantz* v. *Harrow*, 13 Ind. 507; *Johnson* v. *Lybrook*, 16 Ind. 473; *Murray* v. *Mounts*, 19 Ind. 364; *State* v. *Mason*, 21 Ind. 171; *McMakin* v. *Michaels*, 23 Ind. 462; *Rockhill* v. *Nelson*, 24 Ind. 422; *Rusing* v. *Rusing*, 25 Ind. 63.

She cannot, perhaps, be said to be an *heir* in the strict common law sense of the term, by which *heir* is defined to be " one born in lawful matrimony, who succeeds by descent, right of blood, and by act of God, to lands, tenements, or hereditaments, being an estate of inheritance."

The civil law recognizes several kinds of heirs. The relation of the widow, under our statute, as the recipient of real estate by descent from her husband, is very analagous to that of "irregular heir" under the Louisiana code. See Bouvier's L. D., title "heirs." The statute confers upon the widow the right of inheritance, and casts upon her property by descent; and if this does not make her an heir, in a technical sense, it, at least, clothes her with the material attributes of one, and places her in that relation.

It seems clear, therefore, that the right of the widow, under the statute, to a third of the lands of her deceased husband, is not as dowress, but it rests in her, at his death, as an heir, by descent.

The estate thus given is much larger than that of dower. It is a fee simple, and not merely an estate for life. It differs in many other respects from dower; it entitles the wife, without assignment, to immediate possession, as a tenant in

Fletcher *v.* Holmes.

common with the other heirs, and she may convey it at pleasure. On the other hand, it has some of the incidents of dower. The widow is made a favored heir, and the interest which descends to her is exempt from liability for the payment of the debts of the estate. And so, by section twenty-seven, she is not only entitled to a third of all the lands of which her husband may die seized in fee simple, and of all in which he has an equitable interest at the time of his death; but also of all of which he may have been seized in fee simple at any time during the coverture, in the conveyance of which she did not join in due form of law; and section thirty-five contains a restraint upon the power of alienation, either by the husband or by a decree of court, without her assent, so as to defeat the contingent interest intended to be secured to the wife.

The several sections of the act relating to the same subject must be construed together, as a whole, and thus construed the twenty-seventh and thirty-fifth sections, so far as they relate to lands conveyed to the husband in fee during coverture, but of which he may not be seized at the time of his death, are subject to whatever qualification or limitation is contained in section thirty-one. And here arises, in the case at bar, the very question in controversy. The mortgage was given for purchase-money; the wife did not join in it; but section thirty-one declares that, as against the mortgage, or those holding under it, she shall not inherit. The mortgage was foreclosed and the land sold in the lifetime of the husband. Under these circumstances, was the wife a *necessary* party to the foreclosure suit?

The appellant's counsel insist that, independent of section thirty-one of the statute, Mrs. May, even though she were claiming as dowress, under all the rights and incidents pertaining to that estate, and not as an heir, by descent, would have no right to redeem; for the reason that she never had any interest, inchoate or otherwise, in the land.

This proposition is based on the hypothesis that, as the mortgage was given for purchase-money and executed im-

mediately upon the receipt of the deed from the railroad company, Allen May was never seized in fee of the land, within the meaning of the twenty-seventh section of the statute, and, consequently, that the only interest he ever held in the land was merely the equity of redemption, and as that was foreclosed and the property sold in his lifetime, he held no equitable interest at the time of his death.

This position rests upon the assumption that the mortgage reconveyed the legal estate to the mortgagees; and that, as it was given for purchase-money, and executed immediately upon the delivery of the deed, the seizin was merely transitory and did not vest the land in Allen May beneficially for his use. It was so held in *Nottingham* v. *Calvert,* 1 Ind. 527; *Stow* v. *Tifft,* 15 Johns. 458; and the same doctrine is recognized in *M'Mahan* v. *Kimball,* 3 Blackf. 1. See, also, 4 Kent, 38, 39. But as the whole doctrine rests upon the claim that a mortgage conveys the legal estate in the land to the mortgagee, and leaves in the mortgagor an equitable interest only—the equity of redemption—it cannot be sustained under the recent decisions in this State and elsewhere. In the earlier period of the common law, a mortgage was, in fact as well as in form, a conveyance of the entire estate of the mortgagor in the land, upon condition that if he should pay a sum named, by a certain day, he might re-enter. If the condition was broken, by a failure to pay on the day named, the title of the mortgagee became absolute, and the mortgagor was without remedy. Great injustice and hardship often resulted; which finally induced the chancery courts to interfere and grant relief upon the payment of the mortgage debt within a reasonable time.

This was called the "equity of redemption."

Subsequently, the mortgagee, after condition broken, was permitted to file a bill in chancery, to compel the mortgagor to redeem, or have his *equity of redemption* foreclosed, and the court upon the final hearing fixed a time within which the land might be redeemed, and at the expiration

of which, if not redeemed, the mortgagee's title became absolute. This is called a strict foreclosure. This principle is still retained in Massachusetts. There, by statute, the mortgagee may foreclose by entry for condition broken. The entry is required to be made in the presence of witnesses who certify the fact, and the certificate is recorded; after the lapse of three years the foreclosure is complete. *Ellis* v. *Drake*, 8 Allen, 161.

The common law doctrine—that the legal estate vested in the mortgagee—was adhered to many years in this State, as appears by the earlier cases; but it no longer prevails here; nor in most of our sister States. The modern doctrine—settled in this State—is, that a mortgage is but a lien on the land as a security for the debt, and the legal title remains in the mortgagor, subject to the lien of the mortgage. *Francis* v. *Porter*, 7 Ind. 213; *Morton* v. *Noble*, 22 Ind. 160; *Grable* v. *McCulloh*, 27 Ind. 472.

It follows, that Allen May was seized of the legal estate in fee during the coverture, which was only divested by the foreclosure and sale.

In this view of the legal effect of a mortgage, the term "equity of redemption," when applied to the nature of the estate remaining in the mortgagor, is a misnomer, as it no longer indicates the true character of the estate; but by long continued use in the books, and by the bar and bench, it has become so familiar in legal parlance that it is difficult to discontinue it.

A suit in this State to foreclose a mortgage is simply a demand by the mortgagee that the lien created by the mortgage may be enforced, and the land mortgaged be subjected to sale for the payment of the debt.

In this connection, the question as to the effect of the statute, in abolishing dower after the mortgage was executed, upon the claims of Mrs. May, may properly be disposed of.

At the time of its execution, the mortgage, if it had not

been given for purchase-money, would have been subject to the inchoate claim of dower of Mrs. May; but if the land had been sold under the mortgage prior to the 6th of May, 1853—the claim of dower not having become consummate before that time by the death of her husband—she would have been barred of any claim. *Strong* v. *Clem*, 12 Ind. 37; *Frantz* v. *Harrow*, 13 Ind. 507.

But as Allen May continued seized until after the 6th of May, 1853, Mrs. May had an interest in that seizin, under the statute of descents. It would seem, however, that, under the rulings in the case just cited, such claim would be subject to the mortgage, as the mortgage was executed before the law creating the claim was in force. It is, in effect, so conceded in *Morton* v. *Noble*, 22 Ind. 160. But in *Grable* v. *McCulloh*, it was said that in such a case the mortgage might possibly still be subject to an estate for life in the wife.

The question, however, was not in the case, and was not decided. Nor is its decision necessary in this case. Here the mortgage was given for purchase-money, and any claim Mrs. May could have was subordinate to the mortgage; and as she does not profess to claim in opposition to it, the question of her right now to redeem is just the same as it would be if the mortgage had been executed under the present law.

It is insisted by the appellee's counsel that, under the former law, when the widow was entitled to dower, the wife, during coverture, had such an interest in the husband's land, held by legal title, as to entitle her to redeem it from a mortgage having priority over her claim, in such a case as this; that she was a necessary party to a suit to foreclose such a mortgage in the lifetime of the husband; and that the rule is the same under the present law. These positions are controverted by the counsel for the appellant, and numerous authorities are cited on both sides.

The cases in our own reports, claimed to have a bearing on the question, will be first examined.

In *M'Mahan* v. *Kimball*, 3 Blackf. 1, a mortgage was executed by Kimball before marriage. He subsequently died, leaving a widow. The mortgage being still outstanding, the mortgagees filed a bill to foreclose, making the heirs and personal representatives of Kimball—but not his widow—parties. A decree of foreclosure was rendered, and the land offered for sale, but as no person bid a sum sufficient to pay the mortgage debt, the mortgaged property was delivered and conveyed by the sheriff to the mortgagees in satisfaction of the debt, as directed by the decree. The widow subsequently claimed dower in the land, and instituted proceedings to have it assigned, making the mortgagees parties. Commissioners were appointed, who assigned the dower, which was confirmed by the court. The widow then brought an action of disseisin to recover the possession. The case was governed by the statute of 1824 (code of 1824, p. 57) which declared, that "the widow of any person dying intestate or otherwise, shall be endowed of one full and equal third part of all the lands, tenements, and hereditaments, either legal or equitable, whereof her husband or any other person to his use was seized at any time during the coverture; and the dower of such widow shall not be considered as sold or extinguished by a sale of her husband's property, by virtue of any decree, execution, or mortgage." It was held by this court, that after the execution of the mortgage, the mortgagor held only an equitable interest in the land, but that the widow was entitled, under the statute, to dower, subject however to the mortgage, but, as the mortgage was not discharged by the mortgagor in his lifetime, nor by his heirs or representatives after his death, and the assignee being in possession by virtue of a conveyance from the mortgagees, under the decree of foreclosure and sheriff's deed, the widow's right of dower, by such foreclosure was barred.

Judge BLACKFORD, in reporting this case, suggests in a note the very pertinent inquiry, "whether the widow, in the case in the text, as she had a right to redeem the mort-

gage, ought not to have been a party defendant to the bill of foreclosure," and refers to *Heth* v. *Cocke,* 1 Rand. 344.

The widow appeared in court during the pendency of the bill to foreclose, and asked to be made a party defendant, but the request was denied. As the mortgage was outstanding at the death of the mortgagor, the contingent claim of dower of the widow, subject to the mortgage, became consummate by the death of her husband, and she was entitled to redeem; and hence she was a necessary party to complete foreclosure; and not having been made a party, it would seem clear that she might have redeemed after the sale under the foreclosure proceedings.

*Nottingham* v. *Calvert,* 1 Ind. 527, was a petition filed by Mrs. Nottingham, for the assignment of dower in a lot in Andersontown, which she claimed as the widow of one Nathan Carmean, deceased, her former husband. Carmean purchased the lot of one Bird, for one thousand dollars, and paid the purchase-money, except two hundred and fifty dollars. Bird executed to Carmean a deed for the lot, and on the same day the latter executed to the former a mortgage on the lot, in which his wife did not join, to secure the balance of the purchase-money. Bird assigned the mortgage to Calvert. Afterwards Carmean died holding the lot, but leaving the mortgage debt unpaid. Calvert subsequently obtained a decree of foreclosure of the mortgage, under which the lot was sold to him for less than the mortgage debt. The court held, that the mortgage conveyed the fee to Bird, but that the widow of Carmean, under the statute of 1838, was entitled to dower in the equity of redemption. "That equity of redemption," said BLACKFORD, J., who delivered the opinion of the court, "which was the right to redeem the lot by paying the mortgage debt, was never taken advantage of by the widow, or by any other person. The consequence was, that the holder of the mortgage, who is the present defendant, obtained a decree foreclosing the equity of redemption, and had the lot sold under the decree. If the lot had sold for more than the debt, the widow

would have been entitled to dower in the surplus; but as the sale was for less than the debt, her claim to dower is at an end." Here it will be observed that the foreclosure was after the death of Carmean, the mortgagor. The mortgage was for the purchase-money, and the widow had not joined in it. The ruling of the court that Carmean was not at any. time seized of the legal title in fee, had the same effect up- on the claim of dower as the thirty-first section of the present statute of descents has upon the contingent right of inheritance of the wife, by making it subject to the mortgage. There is no intimation in the case that Car- mean's widow was made a party to the foreclosure suit, and, from the fact that it is stated that she did not join in the mortgage, it is to be inferred that she was not.

It has already been conceded in this opinion, that where the foreclosure is after the death of the mortgagor, the wid- ow is a necessary party to such a suit, as she would then have the right to redeem. It is certainly so under the pres- ent statute, as one-third of the land descends to the widow in fee, the same as the residue descends to the other heirs, and there would be the same necessity, where the mortgage held priority over her right, to make her a party, that there would be to make the other heirs parties. But aside from that question, and upon the hypothesis that the suit to fore- close had been in the lifetime of Carmean, the decision would seem strongly to favor the position of the appellant. It is true, that here there was a claim to dower without of- fering to redeem, but it is the clear inference from the lan- guage of the decision, that the time to redeem was before the sale under the decree of foreclosure; and as there was no surplus, the widow's claim to dower was *at an end.*

*Talbott* v. *Armstrong,* 14 Ind. 254, is also referred to by the appellant. There the land in controversy had been con- veyed to Talbott; the deed was not recorded, and was after- wards surrendered up to the grantor, who subsequently con- veyed the land to an innocent purchaser. The suit was brought by the widow and heirs of Talbott to recover the

land.   The court, in discussing the claim of the widow to
dower, use this language:   "If her husband had not paid
the purchase-money for the land, the grantor's lien for that
was paramount to the right of dower, and if the husband,
finding that he could not pay for the land, surrendered his
deed to the grantor, as a means of returning the land in
discharge of the original consideration, the wife could claim
no dower."

*Watson* v. *Clendenin*, 6 Blackf. 477, cited by the appellee,
was a bill in chancery claiming dower in a tract of land and
several town lots, a part of which had been mortgaged by
the husband in his lifetime, his wife joining in the mortgage.
The mortgage seems to have been still outstanding.   In
reference to that part of the claim it is said, "as it is not
shown that the complainant has redeemed the mortgage,
she has no better claim to dower against the mortgagees, or
those claiming under them, than she would have had if the
deed had been absolute;" and *Gibson* v. *Crehore*, 5 Pick. 146,
is cited.

It is insisted in argument for the appellee, that where the
mortgage is given for purchase-money for the land mort-
gaged, and is therefore paramount to any claim of the wife,
and though she does not join in the mortgage, yet that she
has the same right to redeem, and that it is just as neces-
sary to make her a party to a suit to foreclose the mortgage,
brought in the lifetime of the husband, as in a case where
she joins in a mortgage not given for purchase-money.   We
cannot concur in this position.   In the former case, the hus-
band, under the law, mortgages his entire estate in the land,
freed from any claim of the wife, without her joining in
the mortgage.   But in the latter case, though he is seized
of the entire estate, the law imposes a restraint upon his
power of alienation, to the extent of the contingent inter-
est of the wife, unless she joins in the mortgage; and when
she does so join in the mortgage, the act which pledges or
mortgages her contingent interest is her own, and not that
of her husband, and therefore when the court renders a de-

cree for the sale of the land freed from the contingent interest of the wife, it is a decree, to that extent, against her, and is rendered because of her own act, and in such a case she is a necessary party to a complete foreclosure. Besides, by joining in the execution of the mortgage, she becomes a party to it, and in such case, if the mortgage were given for the purchase-money of the land mortgaged, the wife would, at least, be a proper party in a suit to foreclose.

*Patton* v. *Stewart*, 19 Ind. 233, is referred to by appellee's counsel, and claimed to be a direct authority in favor of the appellee.

It was a case to review a judgment against husband and wife for the foreclosure of a mortgage. The judgment had been entered upon a warrant of attorney executed by the husband and wife, and acknowledged by the wife before the clerk of the court.

The mortgage was executed by the husband and wife, and was given for a part of the purchase-money for the land mortgaged.

In the decision of a question made upon the decree against the wife, this language is used: "It (the decree) then proceeded to decree a sale of the mortgaged premises, and a foreclosure of the right of the husband and wife in the property, if they, or any of them, did not pay the debt. This was right. The wife had a right to redeem." It was further held that the wife was not competent to execute the power of attorney, and as she was not served with process and did not appear personally, she was not a party to the suit, and that the decree against her was therefore erroneous.

The wife joined in the mortgage, and if she had been properly before the court, she would undoubtedly have been entitled to redeem under the terms of the decree. The question involved in the case before us was evidently not considered in that case.

It is assumed by counsel, in urging the decision in that case as being in point here, that the wife did not join in the mortgage. The facts stated seem to raise a contrary infer-

ence. And that she did join in the mortgage appears in the subsequent case of *Patten* v. *Stewart*, 24 Ind. 332, arising upon the same judgment, and in which the facts are fully stated.

In *Watt* v. *Alvord*, 25 Ind. 533, Robert Watt purchased land subject to a prior mortgage. To a complaint to foreclose the mortgage, Robert and his wife were made parties. The wife demurred to the complaint. The demurrer was overruled, and that ruling assigned for error, on the ground that the wife was not a proper party. The question was not whether the wife was a necessary party, under the facts of the case, to a complete foreclosure, but might she be legally made a party? or, in other words, was she a proper party? It was held that she was. The question was purely technical, as no personal judgment was rendered against the wife; and even if not a proper party, she could not possibly be injured by the ruling of the court, as the mortgage was paramount to her contingent interest. The question did not, therefore, demand a very serious consideration.

"Any person *may* be made a defendant who *has*, or *claims*, an interest in the controversy, adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved." 2 G. & H. 46, sec. 18.

The case of *Stephens* v. *Bichnell*, 27 Ill. 444, was very similar in its facts to the case at bar. There Stephens and one Collins purchased certain lands of Bichnell, and received from him a deed. They, on the same day, executed to Bichnell their notes for the purchase-money secured by a mortgage on the same lands. Stephens' wife joined in the mortgage. Stephens and Collins subsequently divided the lands, and agreed that each should pay a certain proportion of the purchase-money. Collins paid his part. Bichnell subsequently filed a bill to foreclose the mortgage for the residue. Stephens' wife was not a party. On error in the Supreme Court, it was insisted that because the wife of Stephens was not made a party there was a defect of parties defendant. The question was decided under a provision of the stat-

utes of that State, substantially the same as the thirty-first section of our statute of descents; and it was held that the wife was not a necessary party to the suit; that as the widow in such a case would not be entitled to dower as against the mortgage, the wife whilst the husband was living had no interest as against the mortgage to protect. It is. claimed that the authority of the case is greatly weakened from the fact that it was decided on the authority of *Stow* v. *Tifft,* 15 Johns. 458. But, as we understand the case, it was decided upon the statute alone.

The opinion, after setting out the section of the statute, states that such was the rule at common law. The seizin of the husband passing from him *eo instanti* that he acquired it, and being revested in the grantor, the widow could not claim dower in the premises; and reference is made to *Stow* v. *Tifft,* and to 4 Kent, 38, 39, and cases cited in note *a.*

A number of Massachusetts cases are cited by the appellee. Those mostly relied upon are *Gibson* v. *Crehore,* 5 Pick. 146; *Eaton* v. *Simonds,* 14 Pick. 98; and *Lund* v. *Woods,* 11 Met. 566.

In the first case cited, the wife joined with her husband in the execution of the mortgage. After the death of her husband, his administrator sold the equity of redemption and the purchaser went into possession under his purchase, and subsequently bought in the mortgage. The widow filed a bill to redeem. The defendant claimed a foreclosure by entry for condition broken under the statute, but it was held void for want of notice to the widow.

It was also held that the mortgage was outstanding, and that the widow might redeem. The ruling in *Eaton* v. *Simonds* was to the same effect.

In *Lund* v. *Woods,* the husband purchased the land subject to the mortgage, and subsequently conveyed it to the mortgagee, but his wife did not join in the conveyance. After the death of the husband, the mortgage being outstanding, his widow filed a bill to redeem. It was claimed, as in the former cases, that there had been a foreclosure un-

der the statute, by entry for condition broken. It was held that the entry was under the conveyance of the equity of redemption, and that to make an effectual foreclosure under the statute so as to bar the widow's right to redeem, she must have had three years' notice of the entry for that purpose, after the death of the husband.

In *Davis* v. *Wetherell*, 13 Allen, 60, it was held, that a woman having an inchoate right of dower may have a bill in equity to redeem land from a mortgage in which she has joined with her husband to release dower. The case is an interesting one, but as it does not affect the decision of the question under discussion here, an extended notice of it is not necessary, indeed would be improper, in view of the length to which this opinion has been already extended. But a single extract from the opinion will serve to show that the whole subject of dower, as affected by mortgages in that State, has been and still is so controlled by statutes peculiar to that State, that but little, if any, support can be drawn from the cases, on either side of the question under discussion in this case. It is said in that case, that "before the Revised Statutes, it would seem that if the mortgagee or his assignee had purchased the husband's equity of redemption, he could not cut off the wife's right of dower in the equity by a foreclosure until after the husband's death. *Lund* v. *Woods*, 11 Met. 566. But since the Revised Statutes it has been repeatedly determined that the foreclosure, in the mode prescribed by statute, of a mortgage in which the wife had joined to release her dower, or in case the husband had only been seized of an equity of redemption during coverture, would bar the right of dower. And in a suit against the husband to foreclose, the wife need not be made a party. *Wedge* v. *Moore*, 6 Cush. 8; *Savage* v. *Hall*, 12 Gray, 363; *Farwell* v. *Cotting*, 8 Allen, 211; *Pitts* v. *Aldrich*, 11 Allen, 39."

The case of *Mills* v. *Van Voorhis* was first decided by the Supreme Court of New York (23 Barb. 125), and afterwards by the Court of Appeals (20 N. Y. 412).

It involved, directly, the question whether the contingent claim of dower of the wife, in land mortgaged by the husband for the purchase-money of the same land, the wife not joining in the mortgage, was extinguished by a foreclosure and sale of the land in the lifetime of the husband, the wife not being made a party to the foreclosure suit; and it was held that it did not, and that, as the widow of the mortgagor, she would have the right to redeem, notwithstanding the foreclosure and sale.

In the Court of Appeals, the opinion was delivered by SELDEN, J. The case was decided under a statutory provision identical, in substance, with the thirty-first section of the statute of descents of this State. It was there claimed that, as the mortgage was paramount to any claim of the wife, the purchaser under the mortgage purchased the entire estate in the land, and that as against his title the wife of the mortgagor could have no claim. This would seem to be the material question in the case. It was disposed of by this argument, viz.: " Parties obtaining title under the foreclosure, claim not only under the mortgagee, but under the mortgagor also. They obtain the right of both. So far as they claim under the mortgagee alone they are protected by the statute against the widow, without her having been made a party. In that portion of the estate she has no interest. But in respect to the portion which, under the foreclosure, is obtained from the mortgagor, viz., the equity of redemption, in which she has an interest, her rights are not affected unless made a party." This argument does not, to our minds, commend itself as resting on any solid foundation. It is said in the same opinion to have been the settled doctrine in that State for the last half century, that the mortgagor, notwithstanding the form of the instrument, is to be regarded as the real owner of the property, and the mortgagee, until he obtains possession, as having only a lien or charge upon it.

Under this construction of the legal effect of a mortgage, it is not easy to see any foundation for saying that a pur-

chaser under the mortgage claims one part of the estate under the mortgagee, and another part under the mortgagor, and that, as to the former, the wife has no interest, whilst she has in the latter.

A mortgage given for purchase-money becomes, under the statute, a lien upon the entire estate of the mortgagor in the land, freed from any contingent claim of the wife, but until a foreclosure he retains the legal title, subject to the lien of the mortgage. Upon a foreclosure of the mortgage for the non-payment of the debt secured by it, the mortgagee procures a decree of the court to enforce the lien, by subjecting the land to sale for the payment of the debt. The purchaser, under the decree, is entitled to the entire interest in the estate pledged by the mortgage, and that interest being the whole estate of which the mortgagor was seized, free from any claim of his wife, it follows that her contingent claim, or expectancy, is defeated by the foreclosure and sale; the mortgage being paramount to such contingent claim.

The purchaser's title, under such a sale, is indivisible, as it is entirely derived from the same source. The whole estate being in the mortgagor when he executes the mortgage, he pledges the whole, by the mortgage, to secure the debt. The purchaser holds under the mortgage, and, therefore, under the mortgagee. He, however, derives his title, through the mortgage, from the mortgagor, and may be said to hold the entire estate under him, but only as he holds it under the mortgage.

In the case of *Wheeler* v. *Morris*, 2 Bosw. 524, the ruling by the Superior Court of the city of New York was to the same effect as in *Mills* v. *Van Voorhis, supra.*

Numerous other cases are referred to, but as those already noticed are claimed to be more directly in point, the others may be omitted.

In some of the cases cited in this opinion, the question involved the rights of the wife of a purchaser of land subject to a prior mortgage, and in others, the husband had

executed the mortgage before marriage, and, as in such cases the claim of the wife is subordinate to the mortgage, they seem to involve the same principle, and should be governed by the same rules, as the case at bar.

Whatever doubts may exist as to the proper rule in such cases under the dower law, we think there is no reasonable ground for any under the statute of this State.

By the twenty-seventh section of the statute of descents, a surviving wife is not only entitled to one-third of the lands held by her husband at the time of his death, by either a legal or equitable title, but also of all of which he was "seized in fee-simple at any time during the marriage, and in the conveyance of which she may not have joined in due form of law." But she takes, as the heir takes, by *descent* from her husband.

This she cannot do unless the husband is seized, at the time of his death, of the interest which may descend to her. Under the statute, the wife, during coverture, has no interest or estate in the lands of her husband. The husband is seized of the entire estate unincumbered by any interest of the wife. The wife, it is true, has a contingent interest in the seizin of the husband, which is a mere incident, under the law, of that seizin. *Verry* v. *Robinson*, 25 Ind. 14. It is, in fact, but a contingent claim or right of inheritance, entitling the wife to one-third of the lands held by the husband, upon the contingency that she survives him. The statute does not encumber the title of the husband or vest any interest in the land in the wife, during the marriage; it simply imposes a restraint upon the husband's power of alienation, to the extent of the contingent interest of the wife in his seizin, which he can neither convey nor incumber, except by a mortgage for purchase-money of the same land—unless the wife voluntarily joins therein. He may convey the entire estate subject to the contingency, and if the wife should die before the husband, the purchaser would have an unincumbered title.

The statute, in its legal effect, compels the husband dur-

ing coverture to stand seized of one-third of his land held in fee, upon the contingency that his wife survives him; in which event it descends to her as an heir under the statute. During the coverture the wife stands in the same relation to the seizin of the husband as any other heir, except that the restraint, in her favor, upon the husband's power of alienation secures to her the inheritance in the event that she survives him.

But here, the mortgage having been given for purchase-money of the land mortgaged, there was no restraint upon the power of the husband to pledge or incumber the entire estate in that form. The mortgage covered the whole, free from any contingency of the wife. And by the foreclosure and sale, in the lifetime of the husband, he was divested of all estate in the land, and the whole became vested in the purchaser. The husband, therefore, did not die seized of any interest in the land, and consequently nothing descended from him to his widow.

Mrs. May's prospective right of inheritance, from the moment the mortgage was executed, was suspended, not only on the contingency that she survived her husband, but on the further contingency that her husband should redeem the land from the mortgage.

She had no right to redeem during the life of her husband, because she was not a party to the mortgage, and had no present interest, legal or equitable, in the land; and for the same reasons she was not a necessary party to the foreclosure suit.

Whilst we are satisfied that the conclusion thus reached is clearly correct, it is rendered still more satisfactory to our minds from the fact that a different one would unsettle numerous titles and be productive of much litigation.

Other questions are argued, arising upon the decree rendered by the court, but this decision upon the demurrer to the cross-complaint renders an examination of them unnecessary.

The judgment is reversed with costs, and the cause re-

manded, with directions to the circuit court to sustain the demurrer to the cross-complaint, and with leave to the appellee to reinstate his former answers to the complaint, and for further proceedings in accordance with the agreement of the parties of record in that court.

FRAZER, J.—A mortgage executed by a husband alone, not for purchase-money, would not affect the right of the wife, upon the husband's death, to such share of the land as the law otherwise gives her; and she would, therefore, have no right to redeem it. It is elementary doctrine that the right of redemption attaches to the estate mortgaged, being intended solely for its protection; and, therefore, belongs to all those, and only to those, who have some interest in that estate in privity of title with the mortgagor. Story Eq. § 1,023; 4 Kent Com. 162. In such a case the wife has no occasion to redeem; but upon the death of the husband, she may at once proceed to have the lands partitioned, and her share set apart to her. The cross-complaint in this case did not aver that the mortgage was for purchase-money, and for that reason we all think it was bad on demurrer.

But I do not assent to the further doctrine held by the majority of the court, that the wife has no right to redeem, the mortgage having been given for purchase-money, and foreclosed during the lifetime of the husband. Regarding it as a very mischievous rule, opening a wide door to the practice of frauds upon the rights of married women, and denying to them the most effectual means of protection, I do not feel at liberty to let the case pass without stating some of the considerations which have led me to a conclusion different from that of the majority.

The general elementary principle, already stated, that the right of redemption belongs to all who have an interest in the estate to protect, is not, as I understand, controverted, but I believe it is conceded. It is also conceded that if Mrs. May had the right to redeem before the foreclosure of the

mortgage, she has it yet, inasmuch as she could not be barred of that right by a decree to which she was not a party. Indeed, that, too, is so plain a proposition that it would hardly be controverted by any one.

There remains, then, but one question concerning which we do not agree, viz., whether, in such a case, the wife has, during the husband's life, any interest in the estate to be protected by redemption. In the discussion of this question, brevity will be attained by noting some points conceded by the majority of the court. One of these is, that where the foreclosure is after the death of the husband, the widow has the right to redeem—and this position, it may here be noted, is an effectual disposition of the only case that I know of, and the only one relied upon in the opinion of the majority, which sustains the conclusion from which I dissent. I allude to *Stephens* v. *Bichnell*, 27 Ill. 444, the facts of which, if the case had arisen in this State, would have involved the very question under discussion. It was held that the wife was not a necessary party to a suit for strict foreclosure, brought during the lifetime of the husband, and the reason given, in the language of the judge who delivered the opinion, was, that "the seizin of the husband passing from him *eo instanti* he acquired it, and being immediately revested in the grantor, the widow could not claim dower in the premises. *Stow* v. *Tifft*, 15 Johns. 458; 4 Kent's Com. 38, 39, and cases cited in note *a*. If, then, the *widow* would not be endowable, the wife, whilst the husband is living, can have no interest in the premises, and consequently she need not be a party to the bill." In Illinois, indeed, such is yet the law (30 Ill. 473, 26 *id.* 9); the mortgagee is regarded as the owner of the land, in fee, as was formerly also held in this State; and upon that doctrine *Stephens* v. *Bichnell* stands and was expressly put. But that is not now the law of this State, as we all agree. The Illinois case can, therefore, it seems to me, have no legitimate influence whatever upon the case before us. According to that case, the wife was not dowable, because the husband

was not really seized, and so, of course, she need not, in that State, be a party to a bill to foreclose, even after the husband's death.

My brethren agree also that when the wife joins in the execution of a mortgage, not for purchase-money, she is a necessary party to a suit to foreclose. Cases of that kind are numerous, and, in my opinion, cannot be distinguished in principle from those where the mortgage is for purchase-money; and a careful examination of the reported cases has failed to discover a single one in which such a distinction is made. In *Carroll* v. *Ballance*, 26 Ill. 9, BREESE, J., expressed himself of opinion that there would be great propriety in a distinction which might be made between a mortgage for purchase-money and one not for purchase-money, by which the former should be held to confer greater rights than the latter upon the mortgagee as against the mortgagor; but he admitted that the books did not recognize the distinction, and that the courts could not, therefore, make it. Nor is there any substantial reason for the distinction under consideration here. The right to redeem attaches, as we have seen, solely to the estate mortgaged, and is intended for its protection, and belongs only to those who have an interest in protecting it. It does not inure to one who has executed the mortgage, simply because he has executed it. If a stranger to the estate, having no title, should join the owner in executing a mortgage he would clearly have no right to redeem the mortgage, because he would have no interest to protect by such redemption. Indeed, I suppose it to be well settled that the mortgagor himself, who was seized of the estate when the mortgage was executed, and owes the debt, is not, after having conveyed the equity of redemption, without warranty, a necessary party to a suit to foreclose. *Bigelow* v. *Bush*, 6 Paige, 343; *Chester* v. *King*, 1 Green, Ch. 405; *Vreeland* v. *Loubat*, *id.* 104; Barbour on Parties, 499, 500; Edwards on Parties, 91.

Now, I think enough has been said to make it apparent.

that if, at the commencement of the suit to foreclose, Mrs. May had an inchoate interest in the land to protect by redemption, she is still possessed of it, and has a right to redeem.    To the inquiry, then, what is the nature of the wife's estate in the lands of the husband during his lifetime under our laws?    That it is not an estate consummate is very clear.    Is it an estate *inchoate* like dower?    I know of no beneficial attribute of dower inchoate, as that estate formerly existed in this State, which does not belong also to it.    Instead of an estate for life to the extent of a third, becoming consummate by the husband's death, it is, as I regard it, merely a larger estate, inchoate like dower while he lives, and like it consummate upon his death, and protected by every safeguard which made dower indeed a favorite of the law.

Her right, as it now exists, is just like dower in the particulars following:  1. It attaches to all lands of which her husband was seized in fee simple during the coverture.    1 G. & H. 296, sec. 27.  2. Neither the act of the husband alone, nor any decree, judgment, execution, sale, disposition, or incumbrance, to which the wife is not a party, shall prejudice her right (*id.* 298, sec. 35); except only that a mortgage by the husband for purchase-money shall be paramount to it.    3. The right becomes consummate upon the death of the husband, the wife surviving, and is wholly lost if she do not survive him.    Such is the present statute concerning the matter, and such was the former law concerning dower.    No change has been made, I think, except to increase the estate which the wife takes—at least none in the particulars named.    None is suggested, unless it is embraced in the theory that the wife now takes as heir, and that for that purpose the husband is, by the statute, compelled to stand seized until his death, of that part of the estate which then goes to the wife.    But no such theory prevailed in reference to dower, and the statute has not, in my opinion, afforded the slightest foundation for it, in a case like this.  The seventeenth section of the statute of descents,

which provides that if the husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, &c., can have relation only to lands owned by him at his death. Under that provision, the wife could take nothing in lands held by the husband during coverture, but to which his title had become divested, either by his own conveyance, or by operation of law. It does not, therefore, touch this case at all; and any theory based upon the idea that the widow takes as heir, is, in my opinion, inapplicable to the question in hand. It is by virtue of the twenty-seventh section only, that a widow can claim any part of lands to which the title of the husband has been divested during his life. And thus it reads: "A surviving wife is *entitled*, except as in section seventeen excepted, to one-third of all the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined in due form of law," &c. Surely there is nothing in this language favorable to the theory that the husband must die seized that the wife may take. But I cannot assent to it in any sense, or in any case. I do not agree that the staute *requires* the husband to stand seized to the use of the wife upon the contingency that she shall survive him. Its language seems to me not to warrant the implication. The thirty-fifth section of the statute of descents (1 G. & H. 298) is the one relating to the subject. It leaves the husband at full liberty to convey, sell, dispose of and incumber at his pleasure, but provides that his act alone shall not "prejudice or extinguish the right of the wife." Of course he can only convey while he lives, and this language would be exceedingly senseless if she have no right until his death. It recognizes a present right of some sort, and is intended to protect it. When the husband alone makes a conveyance, he is no longer seized of any part of the estate or possessed of a single attribute of seizin. Seizin is the right to hold (1 Washb. Real Prop. 29), and is either in fact or in law. In the first case there is the right and the actual posses-

sion conjoined, and in the last merely a right to such pos-
session.   Can it be possible that the husband has such right
as to the one-third of his lands, after having delivered a
deed, and that he cannot divest himself of it because of this
statute?

But if this doctrine of the continued seizin of the hus-
band for life for the contigent use of the wife were even
conceded, it seems to me to have no necessary tendency to
support the judgment of my brethren.   A covenant to
stand seized for the use of another necessarily implies a
present right in that other or for his benefit, either vested
or contingent, or in other words, a usee or *cestui que trust.*

Again, the doctrine that the wife has no right until the
death of the husband, as is the case with an heir, to sup-
port which this theory of compulsory or constrained seizin
for her benefit is invoked, seems to me to prove too much.
Consequences would necessarily result from it which it is
thoroughly well settled do not exist in this State.   Indeed
the statute itself forbids their existence.   If the wife in this
case takes merely as heir, having, therefore, no right in the
land until the husband's death, and nothing to protect by
redemption while he lives, it must be so in all cases; and
she would never, during his life, have the right to redeem
or be a necessary party to a suit to foreclose; for we have
seen that the mere execution of a mortgage by one having
no right in the estate does not confer the right to redeem.
Indeed, a mortgage is given, not to confer rights on the
mortgagor, but solely on the mortgagee.   In the case in
hand, the estate passed to Allen May by the conveyance from
his vendor, and the wife's right at once attached; but the
statute gave him power, without her concurrence, to mort-
gage the whole for purchase-money as fully as if she had
joined in the execution of the mortgage, and merely to the
same extent as if she should join him in the mortgage to
secure any other liability.   But I think the fact remained
that she still had whatever right she would have had in the
land if she had joined in the mortgage for the same amount

on any other account. What is that right in any case? Nobody can doubt that it is a right to one-third of the land in fee simple if the mortgage had been paid off, contingent upon her survivorship. And is this of no value, that she shall be denied the right to protect it by discharging the incumbrance? Must she submit helplessly to have the whole estate sold, and her right forever barred, for a small sum, when it is worth many thousands? If she has no right, of course, she is not injured, and has no·reason to interfere. But her right has a present value, capable of computation by methods recognized by all the courts of this country and Great Britain. Given her age, the age of the husband, and the value of the whole estate, and the annuity tables furnish the data to tell its present value. It was so in case of dower, and it must be equally so as to the greater estate now given in its stead. *Bartlett* v: *Vanzandt*, 4 Sandf. Ch: 396. In this very case, if the sale of the "Soldier's Home" upon the decree had realized a fund in excess of the decree and costs, can it be doubted that Mrs. May would have been entitled to have a part thereof invested for her use upon the ground of equitable conversion? The books give no doubtful answer to this question. Tyler on Inf. & Cov. 542, and cases cited. And is the right of redemption dependent upon a fact which will not be developed until the land is actually sold and it is too late to redeem?

But it is said that in this case she had no right while the husband lived, because the mortgage was paramount to her right. I admit that the mortgage was paramount, but I do not think the conclusion follows which is claimed. If the husband die, I suppose that the mortgage is still paramount; and yet it is conceded that then she has the right to redeem. But I do not understand how the fact that the lien of the mortgagee is paramount to the estate mortgaged bars the right of redemption. If I comprehend the language I am using, I feel assured that the lien of a valid mortgage is always paramount to the remaining estate of the mortgagor. But the right to redeem is not a right hos-

tile to that of the mortgagee.. The right of a debtor to pay a debt is not hostile or paramount to the right of the cred· itor to demand payment. Payment satisfies the creditor and is a lawful method of extinguishing his claim, and consistent with it. The lien of the mortgage is for the security of the debt; payment discharges the lien and saves the mortgaged estate, and is the right, as has been seen, of any one whose interests in the estate may be protected by such payment. And this is the right of redemption which is not barred without giving a day in court.

So much by way of an attempt to solve the question before us by the application of elementary principles. Now how are the reported cases?

In this State, I think, the question ought to be deemed settled by the decisions of this court; and that the rule *stare decisis* should apply, a rule essential to the repose of titles and to the uniform and intelligent administration of justice, a rule which often constrains courts and has many times governed this court in following cases when a clear conviction existed that the cases followed were wrong.

We have seen that the mere execution of a mortgage does not give the right to redeem it; and, indeed, this is too plain for dispute. Then *Patton* v. *Stewart*, 19 Ind. 233, is none the less in point because of the fact that the wife joined in the mortgage for purchase-money. It was a suit to foreclose during the life of the husband. It was expressly held that "the wife had a right to redeem," and it was said that the decree which gave her that privilege was right. There was no decree against the wife which could injure her if she had not the right to redeem. This court cannot reverse for errors which do not affect substantial rights. 2 G. & H. 122, sec. 101. And yet that case was reversed because she was not· made a party by service of summons. The case called for the consideration of the question before us; it was considered and decided directly, and without any circumlocution.

In *Watt* v. *Alvord*, 25 Ind. 533, we held that the wife. of

a purchaser of premises subject to a mortgage had, during the life of her husband, a contingent interest in the equity of redemption, citing in support of the proposition *Mills* v. *Van Voorhis*, 23 Barb. 125, and that for that reason she was a proper party to a suit to foreclose. We were not, in that case, it is true, called upon to say whether or not she was a necessary party; but if the reason given was a correct proposition, if she had a contingent interest in the equity of redemption, her right to protect that interest by redeeming the mortgage would necessarily follow. Indeed, I should have found it difficult in that case to give a reason for the conclusion reached, that the wife was a proper party, other than the one which would prove her a necessary party to bar her right of redemption. Those who have an interest in the controversy, those who claim an interest, and those without whom a complete determination of the matters involved cannot be had, only, are proper parties. 2 G. & H. 46. In that case it was not alleged that she claimed an interest. How, then, was she a proper party unless she had an interest, and what interest had she but one inchoate, as wife?

In *Noel* v. *Ewing*, 9 Ind. 37, this court, in considering the change which the acts of 1852 had made in the rights of married women in the lands of their husbands, after showing how dower was favored, said, "it is not dower itself which the law holds sacred. It is the purpose for which dower was reserved; it is the support of the widow out of the wealth she has helped to acquire which the law favors. No matter what the name, whether dower or some other estate, they are all the same. The support of the widow is the end to be attained. The law of 1852 substituted a third in fee in lieu of a third for life. The courts must regard the substitute with the same favor, and administer it with the same liberality extended to dower, and for the same reason, that the widow is the favorite of the law." A construction of the statute in the spirit thus declared, leaves

no room for the doctrine that the wife, until the husband dies, has no right to be protected by redemption.

So in every case in this court, where there has been occasion to speak of the wife's right in the husband's lands during his life, it has been recognized as a present inchoate right like dower was, and protected like it. *Very* v. *Robinson,* 25 Ind. 14; *Morton* v. *Noble,* 22 Ind. 160; *Perry* v. *Borton,* 25 Ind. 274. So dower was universally regarded. It was such a right in the land as to constitute an incumbrance during the life of the husband, within the operation of a covenant against incumbrances. *Prescott* v. *Trueman,* 4 Mass. 627; *Shearer* v. *Ranger,* 22 Pick. 447; *Whisler* v. *Hicks,* 5 Blackf. 100. The law is a practical system, operating upon the transactions of life, and the soundness of a proposition in it is sometimes best tested by the consequences which will result from it. Now, if the wife has no right in the estate while the husband lives, of course, it is not an incumbrance upon the estate, though it may sweep away one-third of it, and a covenant against incumbrances, in a deed, is not broken by the fact that the wife of some previous owner, yet living, has not joined him in a conveyance of the land. Though inchoate dower was such, the greater estate, a possibility of a third in fee, is not. Inchoate dower the purchaser might extinguish, and then recover from his grantor, upon the covenant, such reasonable sum as was thus expended; not so, however, with the greater estate, which the statute now gives the wife, vesting upon the happening of the identical contingency which made dower consummate.

*Mills* v. *Van Voorhis,* 23 Barb. 125, upon the authority of which *Watt* v. *Alvord, supra,* was put, is directly in point. The case went to the Court of Appeals, where it was affirmed. 20 N. Y. 412. The opinion of that court by SELDEN, J., is somewhat lengthy and, to my mind, very conclusive in its reasoning, not, I think, resting upon a single proposition, as my brother ELLIOTT seems to suppose. *Bell* v. *The Mayor of N. Y.,* 10 Paige, 49, was cited, a foreclosure

after the husband's death, and in point, unless a distinction would be made between it and one during the husband's life; and whether such a distinction could be made was considered and disposed of thus: "There is not the slightest reason, however, for giving to such a foreclosure (during the husband's life) any greater effect in cutting off the dower rights of the wife, than to one which takes place after his death. The inchoate rights of the wife are as much entitled to protection as the vested rights of the widow. Neither can be impaired by any judicial proceeding to which she is not made a party."

The same doctrine is maintained in Massachusetts with equal distinctness. *Davis* v. *Wetherell*, 13 Allen, 60; *Lund* v. *Woods*, 11 Met. 566; *Gibson* v. *Crehore*, 5 Pick. 146; *Eaton* v. *Simonds*, 14 Pick. 98. And it is stated by a recent learned and useful writer (who cites a great multitude of cases, many of which I have verified) to be equally well settled in most of the American States. Tyler on Inf. and Cov. 541–3. See, also, 1 Scrib. on Dow., chap. 23, §§ 24–34. The unusual length of this opinion seems to forbid a further citation or examination of authorities in detail, and, indeed, admonishes me that it should extend no further.

GREGORY, C. J.—I concur in the opinion of the majority, for the reason that I do not think, in any phase of the case presented by the record, that the widow of Allen May, deceased, has the right to redeem. But I do not wish to be understood as holding, where a husband purchases land, during marriage, and at the time of the purchase mortgages it to secure the purchase-money, and there is a foreclosure and sale during the lifetime of the husband, in a proceeding to which the wife is not a party, that she cannot, under any circumstances, redeem.

Where the mortgage premises are not more than sufficient to pay the mortgage debt, the wife has no interest whatever to protect; and, in such a case, she is not a necessary party in the suit to foreclose; but if the mortgage

premises are worth more than the debt, then, in my judgment, she has an interest to protect, and is a necessary party. This must be determined by the value of the property at the time of the foreclosure, and not its value at the time she offers to redeem.

When the wife is not a party to the record, the amount for which the mortgage premises sold at the sheriff's sale cannot conclude her. She is not presumed to have any notice of the proceeding, and not having had an opportunity to protect her rights, the record cannot estop her.

It may be said that there is no authority for this position; I answer, that there are but three states having this statutory provision, New York, Illinois, and Indiana. The courts in New York hold that the wife is a necessary party in the suit to foreclose. Illinois, as I understand the ruling of her Supreme Court, holds otherwise.

This, I think, leaves the matter open. The conclusion to which I have arrived will promote the ends of justice, and meets all the difficulties arising from a different ruling.

*T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*A. G. Porter, B. Harrison, W. P. Fishback, L. Barbour,* and *C. P. Jacobs,* for appellee.